# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-KA-01478-SCT

*BETTIE MICHELLE GINN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/23/2002 |
| TRIAL JUDGE: | HON. GEORGE B. READY |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DAVID L. WALKER |
| | TOMMY WAYNE DEFER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/09/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

## BEFORE SMITH, P.J., WALLER AND CARLSON, JJ.

### CARLSON, JUSTICE, FOR THE COURT:

¶1.     Bettie Michelle Ginn appeals her conviction under a two-count indictment: possession of two or more precursor chemicals and possession of methamphetamine. For the Count I conviction, Ginn was sentenced serve a fifteen years in the custody of the Mississippi Department of Corrections, with ten years suspended and five years to serve, and for the Count II conviction, eight years in the custody of the Mississippi Department of Corrections, with three years suspended and five years to serve concurrently with the sentence imposed in Count I.

¶2.    Ginn raises six issues on appeal: whether the trial court erred in (1) denying her circumstantial evidence jury instruction; (2) overruling her objection to evidence of other crimes; (3) denying her motion in limine to suppress the search of the vehicle; (4) denying her motion to dismiss the indictment; (5) denying her motion to dismiss indictment for failure to provide Ginn with a federal and state constitutional speedy trial; and, (6) denying her motion for a new trial or, in the alternative, for judgment notwithstanding the verdict.  Finding no reversible error, we affirm.

### FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶3.    The facts are undisputed.  On April 14, 2001, Horn Lake Police Officer Harold William Bayles noticed a female passenger inside a SUV in the parking lot of Target and Kroger removing her shirt. Officer Bayles began to approach the vehicle. The driver of the SUV noticed the officer approaching and began to drive away.  Officer Bayles initiated an investigatory stop.  The driver, Dennis Hill, got out of the vehicle and acted very nervous.  Hill produced two altered driver's licenses before the female passenger produced Hill's valid license from inside the vehicle.  Officer Bayles noticed needle marks on Hill's arms and two orange syringe caps on the dashboard.  Hill denied being an insulin user and told Officer Bayles he had a syringe loaded with methamphetamine on the driver's seat.  During a weapons pat-down, a knife was found concealed in Hill's pocket.

¶4.    After detaining Hill, Officer Bayles went back to the SUV to perform a weapons search of the passenger, Bettie Michelle Ginn, who produced from her pocket a packet containing a white powdery substance which Officer Bayles immediately believed, and was later confirmed by scientific testing, to be methamphetamine.  An inventory of the vehicle revealed six cans of Starter Fluid, eleven containers of Liquid Heat, 3,312 tablets of Sudafed, one syringe containing a liquid, and a spoon with brown residue. Starter Fluid, Liquid Heat, and Sudafed are precursor chemicals or drugs used in the unlawful manufacture

2

of methamphetamine, a controlled substance. A records check of the vehicle revealed that the SUV belonged to Ginn's grandfather.

¶5. Ginn was arrested and taken to the police station, where she executed a "Statement of Rights" form. Thereafter, Ginn handwrote a statement which says, in pertinent part, "I know that Kris Ray cooks meth and believe has for 3 to 4 years. I also believe that on other occurrances [sic] pills that we purchased were for Kris Ray." Ginn was tried before a jury on August 21, 2002, and was convicted on both counts of the indictment. Post-trial motions were filed on August 22, 2002. On August 23, 2002, the trial court denied Ginn's post-trial motions, and Ginn, through counsel, filed a notice of appeal the same day.

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRED IN DENYING GINN'S CIRCUMSTANTIAL EVIDENCE JURY INSTRUCTION.

¶6. Ginn's first assignment of error is whether the trial court should have given a jury instruction concerning circumstantial evidence as to Count I (possession of two or more precursor chemicals). This Court has held that "[a] circumstantial evidence instruction must be given unless there is some type of direct evidence such as eyewitness testimony, dying declaration, or confession or admission of the accused." *Deal v. State*, 589 So.2d 1257, 1260 (Miss. 1991) (citing *Mack v. State*, 481 So.2d 793, 795 (Miss. 1985)). This Court has also stated:

> [C]ircumstantial evidence instructions are required where the only evidence of the crime is circumstantial. In other words, "when the prosecution is without a confession and without eyewitnesses to the gravamen of the offense charged." *Woodward v. State*, 533 So.2d at 431. We have held failures to grant such an instruction where one is required to be reversible error. *Simpson v. State*, 553 So.2d 37, 39 (Miss. 1989).

*Swinney v. State*, 829 So.2d 1225, 1236 (¶ 52) (Miss. 2002).

¶7. Ginn alleges that there was no direct evidence linking her to possession of the precursor chemicals

3

and that the State's case was based upon circumstantial evidence. There was no evidence such as fingerprints, sales receipts, or a co-defendant's confession connecting her to the precursor chemicals. Conversely, the State contends that the case against Ginn was not circumstantial. The State relied on direct evidence, specifically the materials constituting the precursor chemicals were located in the vehicle where Ginn was a passenger and the written statement made by Ginn. The trial court admitted Ginn's post-*Miranda* warning statement: "I know that Kris Ray cooks meth and believe has for 3 to 4 years. I also believe that on other occurrances [sic] pills that we purchased were for Kris Ray." This statement was admitted for the purpose of showing knowledge, intent, or plan under Miss. R. Evid. 404(b). Ginn also testified at trial that she was aware the chemicals in the vehicle were used in the manufacture of methamphetamine. The post-*Miranda* warning out-of-court statement also placed her in possession of the chemicals.

¶8.     Additionally, the trial court granted Jury Instruction Number 11(S-3), which informed the jury:

> In order to find the Defendant guilty of Possession of Pseudoephedrine/ Ephedrine, Methanol and Ether, being two (2) or more precursor chemicals or drugs, there must be sufficient facts to warrant a finding by the jury that the Defendant was aware of the presence and character of the substance and was intentionally and consciously in possession the [sic] substance. It need not be actual physical possession. Constructive possession may be shown by establishing that the substance was subject to the Defendant's dominion or control.

¶9.     Because (1) the precursor chemicals were found in the vehicle in which Ginn was a passenger; (2) there were two orange syringe caps in plain view on the dashboard; (3) there was a syringe loaded with methamphetamine in plain view on the driver's seat near Ginn; (4) Ginn had a packet of methamphetamine on her person; and, (5) the statement Ginn gave to police indicated that she was aware that the materials were used for the manufacture of methamphetamine, the quality and character of the evidence was such that it was beyond the realm of being circumstantial as it related to the charge of possession of two or more

4

precursor chemicals in Count I of the indictment. The jury was thus properly instructed on constructive possession, and the jury was likewise justified in its verdict based on the evidence presented. *Jones v. State*, 693 So.2d 375, 376-77 (Miss. 1997). Based on the totality of the evidence presented at trial, the evidence was not purely circumstantial, and the trial court thus properly refused Ginn's tendered circumstantial evidence instruction. Therefore, this issue is without merit.

## II. WHETHER THE TRIAL COURT ERRED IN OVERRULING GINN'S OBJECTION TO EVIDENCE OF OTHER CRIMES.

¶10.    Ginn assigns as the second error that the trial court erred in admitting her statement, which contained an admission of a previous crime(s). The statement made was: "I also believe that on other occurrances [sic] pills that we [Ginn and Hill] purchased were for Kris Ray." Again, Ginn was charged with two counts: possession of precursors with intent to manufacture and possession of methamphetamine. This Court reviews the admission of evidence under an abuse of discretion standard. *Farris v. State*, 764 So.2d 411, 428 (Miss. 2000). This Court has held:

> A case may be reversed based on the admission of evidence if the admission results "in prejudice and harm" or adversely affects a substantial right of a party. *Farris*, 764 So.2d at 428; *Hansen v. State*, 592 So.2d 114, 132 (Miss. 1991).

*Smith v. State*, 839 So.2d 489, 494-95 (¶ 8) (Miss. 2003). Ginn also argues that the statement was not admissible under Miss. R. Evid. 401, 402, 403, and 404(b).

¶11.    However, as discussed above, this statement was admitted to show that Ginn knew that these items were used in the manufacture of methamphetamine under Miss. R. Evid. 404(b). The trial court correctly held that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. Miss. R. Evid. 403. The statement was also relevant in that it placed Ginn herself in possession of the precursor materials. Miss. R. Evid. 401 & 402.

¶12.     In *Crosswhite v. State*, 732 So.2d 856, 863 (Miss. 1998), this Court held that the trial court properly admitted an envelope with words significant to manufacture of methamphetamine as evidence of knowledge. In *De La Beckwith v. State*, 707 So.2d 547, 579-80 (Miss. 1997), we upheld the admission of letters and statements the defendant made to others in the past and held that they were relevant for showing motive and intent. We further held that any issue about remoteness in time went to relevancy, which was a matter for the jury to determine.

¶13.     Here, Ginn knew that the chemicals found in the vehicle in which she was a passenger (pseudoephedrine, liquid Heet, and Prestone starter fluid) were used in the manufacture of methamphetamine. The statement went directly to her knowledge in that she and Hill had previously purchased the pseudoephedrine pills for the "cook." The evidence was relevant, and the probative value substantially outweighed any prejudicial effect. The statement was admissible for purposes of showing knowledge or intent. Ginn also had the opportunity to soften the blow of this evidence if she were concerned about its adverse impact upon the jury. Ginn had pre-filed Jury Instruction Number D-3, a cautionary instruction, which, if tendered to the trial court for consideration and given to the jury, would have informed the jury of the limited evidentiary value of this statement, such as going to proof of motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. However, at the jury instruction conference, defense counsel chose to withdraw this instruction. *See White v. State*, 722 So.2d 1242, 1247-48 (Miss. 1998); *Carr v. State*, 655 So.2d 824, 837 (Miss. 1995); *Ford v. State*, 555 So.2d 691, 695-96 (Miss. 1989).

¶14.     Therefore, this issue is without merit.

### III.     WHETHER THE TRIAL COURT ERRED IN DENYING GINN'S MOTION IN LIMINE TO SUPPRESS THE SEARCH OF THE

**VEHICLE AND CONTINUING OBJECTIONS RELATED THERETO AT THE TRIAL.**

¶15.    In sum, Ginn's third assigned error is that the police officer lacked probable cause or reasonable suspicion to approach the vehicle in the public parking lot when she was changing her shirt.  Ginn further reasons that since there was no probable cause or reasonable suspicion, she was subjected to an illegal stop, search, and seizure.  On this basis, Ginn contends that the fruits of the stop are inadmissible.  The standard of review for admission of evidence in a criminal case is abuse of discretion. *Harris v. State*, 731 So.2d 1125, 1130 (¶ 29) (Miss. 1999); *Peterson v. State*, 671 So.2d 647, 655-56 (Miss. 1996).

¶16.    We agree with the trial court's assessment that the main consideration is the original stop.  Ginn argues that although she was changing her shirt, her breasts were not exposed and, thus, she was not violating Mississippi's indecent exposure law.  Miss. Code Ann. § 97-29-31 (Rev. 2000) states: "A person who wilfully and lewdly exposes his person, or private parts thereof, in any public place, or in any place where others are present, or procures another to so expose himself, is guilty of a misdemeanor ...." Because her breasts were not bare, Ginn reasons that the officer had no reason to stop or even approach the vehicle.

¶17.    In analyzing this type of situation, this Court has looked to whether an officer acts reasonably.  We have held:

> The question is not whether a driver is suspected of a felony or misdemeanor, but whether a law enforcement officer acts reasonably in stopping a vehicle to investigate a complaint short of arrest. This Court stated in *Singletary* [*v. State*, 318 So.2d 873, 876 (Miss. 1975)]:
>
> > Police activity in preventing crime, detecting violations, making identifications, and in apprehending criminals may be divided into three types of action: ... (2) Investigative stop and temporary detention: To stop and temporarily detain is not an arrest, and the cases hold that given reasonable circumstances an officer may stop and detain a person to

resolve an ambiguous situation without having sufficient knowledge to justify an arrest....

*Floyd v. City of Crystal Springs*, 749 So.2d 110, 117-18 (¶ 28) (Miss. 1999). In support of her contention, Ginn relies on *Boyd v. State*, 758 So.2d 1032 (Miss. Ct. App. 2000), and *McDuff v. State*, 763 So.2d 850 (Miss. 2000). Unfortunately for Ginn, neither of these cases supports her position. In *Boyd*, the defendant was stopped based upon the officer's knowledge that the defendant's driver's license had been suspended eight years earlier. *McDuff* involved the involuntary and unknowingly drawing of blood for testing after a fatal motor vehicle accident.

¶18. In the case sub judice, the officer personally observed an ambiguous situation – a woman removing her shirt within a vehicle in a public parking lot. It was reasonable for the officer to investigate to see what was actually occurring. Officer Bayles testified that as he approached the vehicle the male driver began to drive away. This action served to further raise suspicion, which lead to the investigatory stop. Things escalated from there; that is, Officer Bayles observed two syringe caps on the vehicle's dashboard in plain view and Hill, acting very nervous, produced altered driver's licenses and told the officer about the needle loaded with methamphetamine. A safety pat-down revealed that Hill had a concealed knife. At this point, the officer had more than probable cause to apprehend Hill and to further investigate the vehicle, its contents, and its passenger.

¶19. Based upon the foregoing, the trial court did not abuse its discretion in denying Ginn's motion in limine. This issue is without merit.

> **IV. WHETHER THE TRIAL COURT ERRED IN DENYING GINN'S MOTION TO DISMISS THE INDICTMENT DUE TO OFFICER HAROLD WILLIAM BAYLES'S LACK OF PROBABLE CAUSE TO ARREST GINN FOR THE CHARGES ALLEGED IN THE INDICTMENT.**

¶20. Ginn argues that the indictment was improper because the officer lacked probable cause to arrest her. As shown above, there was sufficient evidence to show that the officer encountered an ambiguous situation which gave him reasonable grounds to investigate the vehicle located in a public parking lot. After the officer made an investigatory stop of the vehicle, the driver, acting very nervously and displaying needle marks on his arms, admitted there was a syringe loaded with methamphetamine between the seat where he and Ginn were sitting. A weapons pat-down of the driver revealed a concealed knife. Once the investigative stop was made, the officer may no doubt rely upon items in plain view to provide probable cause for an arrest. Here, this included the syringe cap, the needle marks, and the altered driver's licenses. When Hill was patted down for the officer's safety, a concealed knife was located. Ginn was the only passenger in the vehicle. When Ginn was patted down for the officer's safety, she pulled out of her pocket a packet containing a white powdery substance which Officer Bayles believed to be methamphetamine.

¶21. Based upon the foregoing, there was sufficient evidence which clearly revealed that Officer Bayles acted reasonably when he initiated an investigatory stop. Furthermore, Officer Bayles's subsequent actions, including the inventory of the contents of the vehicle, were also reasonable under the facts and circumstances presented. Therefore, Ginn's fourth assignment of error is without merit.

**V.   WHETHER THE TRIAL COURT ERRED IN DENYING GINN'S MOTION TO DISMISS INDICTMENT FOR FAILURE TO PROVIDE GINN WITH A FEDERAL AND STATE CONSTITUTIONAL SPEEDY TRIAL.**

¶22. Ginn next argues that a delay of sixteen months from the date of her arrest to the date of her trial was a violation of her federal and state right to speedy trial. Ginn was arrested on April 14, 2001. The two-count indictment was filed and recorded on January 24, 2002. Ginn waived arraignment and entered a plea of not guilty on February 20, 2002. The trial took place on August 21, 2002.

9

(A) *Federal Speedy Trial.*

¶23.    In looking at a person's federal rights to a speedy trial, this Court has adopted the four-part test set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *See Brengettcy v. State*, 794 So.2d 987, 992 (Miss. 2001).

> The four factors of the test include: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2182; *Brengettcy*, 794 So.2d at 992. No one factor is dispositive, and the balancing test is not restricted to the *Barker* factors, so other factors may be considered.

*Poole v. State*, 826 So.2d 1222, 1228-29 (¶ 18) (Miss. 2002).  The first factor is the length of delay from the time of arrest. *Simmons v. State*,  678 So.2d 683, 686 (Miss. 1996); *Smith v. State*, 550 So.2d 406, 408 (Miss. 1989).  Ginn was arrested on April 14, 2001, and by the time she was tried on August 21, 2002, a total of more than sixteen months had passed.  We have previously recognized that a delay of eight months or more is presumptively prejudicial.  *Id*. at 408.  Therefore, we must look to the other factors.

¶24.    The second factor is the reason for the delay.  Six months of the inaction was due to the processing of the evidence by the Mississippi Crime Lab.  Because the policy of funding is determined by the Mississippi Legislature, the trial judge correctly determined that "the reason for the delay is not to be held against [the State] in a strong fashion."

¶25.    The third factor to be considered is the defendant's assertion of the right.  Ginn did not file a written request for a speedy trial until April 8, 2002, almost twelve months after her arrest, roughly two and one-half months after the indictment was filed, and roughly one and one-half months after entry of her not guilty plea.  Nine days later, Ginn filed a Motion to Dismiss For Failure to Provide the Defendant With a Federal

and State Constitutional Speedy Trial. The motion was denied on May 29, 2002. The trial judge correctly assessed this factor against Ginn.

¶26.   The final factor is prejudice against the defendant. We have held:

> [W]hen the length of delay is presumptively prejudicial, the burden of persuasion is on the state to show that the delay did not prejudice the defendant. *State v. Ferguson*, 576 So.2d 1252, 1254 (Miss. 1991). Nevertheless, if the defendant fails to show actual prejudice to his defense, this prong of the *Barker* balancing test cannot weigh heavily in his favor. *Polk v. State*, 612 So.2d 381, 387 (Miss. 1992).

*De La Beckwith v. State*, 707 So.2d at 567 (¶ 65) (finding twenty-six year delay between second mistrial and return of second indictment was not a violation of defendant's rights). "[P]rejudice to the defendant may manifest itself in two ways. First, the defendant may suffer because of the restraints to his liberty, whether it be the loss of his physical freedom, loss of a job, loss of friends or family, damage to his reputation, or anxiety. Second, the delay may actually impair the accused's ability to defend himself." *Stevens v. State*, 808 So.2d 908, 917 (¶ 24) (Miss. 2002) (citing *Duplantis v. State*, 708 So.2d 1327, 1336 (Miss. 1998)).

¶27.   Although Ginn testified that she experienced worry and anxiety in anticipation of the trial, the record cites no pretrial incarceration or statement of prejudice. The trial court noted that anxiety is experienced by every defendant in a criminal case and that Ginn did not experience any extraordinary anxiety. Ginn next asserts that she was prejudiced in that the co-defendant, Hill, was not served with the indictment and did not testify at the trial. However, if Ginn felt that Hill's presence was necessary to her defense, she could have secured his presence at trial by way of a subpoena. This factor weighed against Ginn.

¶28.   Based upon the analysis of the four factors under *Barker*, there was no violation of Ginn's federal right to a speedy trial.

(B)  *Statutory Speedy Trial*.

¶29. Ginn's statutory right to a speedy trial was not violated. Our speedy trial statute, Miss. Code Ann. § 99-17-1 (Rev. 2000), provides:

> Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.

*Cf. Smith v. State*, 550 So.2d 406, 407-08 (Miss. 1989). Ginn was arraigned on February 20, 2002, and put to trial 182 days later on August 21, 2002; therefore, there was no violation of the 270-day rule. *Lightsey v. State*, 493 So.2d 375, 378 (Miss. 1986).

¶30. This issue is without merit.

### VI. WHETHER THE TRIAL COURT ERRED IN DENYING GINN'S MOTION FOR A NEW TRIAL OR IN THE ALTERNATIVE FOR JUDGMENT NOTWITHSTANDING THE VERDICT.

¶31. In her final assignment of error, Ginn contends that she should have been granted a new trial or, alternatively, judgment notwithstanding the verdict. The standards of review both are soundly embedded in our case-law:

> A motion for judgment notwithstanding the verdict implicates the sufficiency of the evidence. *Sheffield v. State*, 749 So.2d 123, 125 (Miss. 1999). The standard of review for the legal sufficiency of the evidence is well-settled:
>
>> [W]e must, with respect to each element of the offense, consider all of the evidence--not just the evidence which supports the case for the prosecution--in the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
>
> *Id*. (quoting *Gleeton v. State*, 716 So.2d 1083, 1087 (Miss. 1998)).

12

A motion for a new trial, however, falls within a lower standard of review than does that for a judgment notwithstanding the verdict. *Id.* at 127. A motion for a new trial simply challenges the weight of the evidence. *Id.* This Court has explained that it will reverse the trial court's denial of a motion for a new trial only if, by doing so, the court abused its discretion. *Id.* (quoting *Gleeton v. State*, 716 So.2d at 1088). "We will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." *Id.* (quoting *Groseclose v. State*, 440 So.2d 297, 300 (Miss. 1983)). This Court has also explained that factual disputes are properly resolved by a jury and do not mandate a new trial. *McNeal v. State*, 617 So.2d 999, 1009 (Miss. 1993).

*Holloway v. State*, 809 So.2d 598, 605-06 (¶¶ 21-22) (Miss. 2000).

¶32.    In support of this argument, Ginn relies on *Pate v. State*, 557 So.2d 1183, 1187 (Miss. 1990), and *Powell v. State*, 355 So.2d 1378 (Miss. 1978). In *Pate*, we reversed a conviction of possession of marijuana where the defendant had checked out of the hotel room the day before the marijuana was found. In *Powell*, we affirmed a conviction where the controlled substance was found in the closet of the bedroom in the house on which the defendant paid the rent. In so doing, we stated:

> The correct rule in this jurisdiction is that one in possession of premises upon which contraband is found is presumed to be in constructive possession of the articles, but the presumption is rebuttable. We have held that where contraband is found upon premises not in the exclusive control and possession of the accused, additional incriminating facts must connect the accused with the contraband. Where the premises upon which contraband is found is not in the exclusive possession of the accused, the accused is entitled to acquittal, absent some competent evidence connecting him with the contraband. *Sisk v. State*, 290 So.2d 608 (Miss. 1974).

*Powell v. State*, 355 So.2d at 1379. In the case sub judice, there were additional incriminating facts that connected Ginn to both the precursor chemicals and the methamphetamine.

¶33.    As to Count II (possession of methamphetamine), Ginn herself pulled out the packet containing white powdery substance from her pocket. That substance later tested positive as methamphetamine. As to Count I (possession of precursors), the items were located in the vehicle in which the only persons inside

were Ginn and Hill. Ginn implicated herself by the written post-*Miranda* warning statement that "I also believe that on other occurrences pills that we (Ginn and Hill) purchased were for Kris Ray." This statement defeats Ginn's efforts to rebut the presumption that she had constructive possession of the precursors and drugs. The evidence presented at trial is not such that reasonable and fair-minded jurors could only find Ginn not guilty. Nor was the verdict contrary to the overwhelming weight of the evidence. Any factual disputes were properly put before the jury. Therefore, this issue is without merit.

## CONCLUSION

¶34. After a thorough review of the record before us and consideration of the applicable law, we find no reversible error, and therefore we affirm the judgment of conviction and imposition of sentence on this two-count indictment in the Circuit Court of DeSoto County.

¶35. **COUNT I: POSSESSION OF TWO OR MORE PRECURSOR CHEMICALS AND SENTENCE OF FIFTEEN (15) YEARS, WITH TEN (10) YEARS SUSPENDED AND FIVE (5) YEARS TO SERVE, IN CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: POSSESSION OF METHAMPHETAMINE AND SENTENCE OF EIGHT (8) YEARS, WITH THREE (3) YEARS SUSPENDED AND FIVE (5) YEARS TO SERVE, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONCURRENTLY WITH THE SENTENCE IMPOSED IN COUNT I. APPELLANT SHALL PAY A FIVE-HUNDRED DOLLAR ($500.00) FINE, SIXTY-TWO DOLLARS AND FIFTY CENTS ($62.50) TO THE HORN LAKE, MISSISSIPPI POLICE DEPARTMENT AND COURT COSTS AT A RATE OF ONE-HUNDRED DOLLARS ($100.00) PER MONTH BEGINNING NINETY (90) DAYS AFTER RELEASE AND OTHER CONDITIONS. APPELLANT IS GIVEN CREDIT FOR THREE (3) DAYS SERVED.**

**PITTMAN, C.J, SMITH, P.J., WALLER, COBB AND EASLEY, JJ., CONCUR. GRAVES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, P.J. DIAZ, J., NOT PARTICIPATING.**

**GRAVES, JUSTICE, DISSENTING:**

14

¶36. The majority holds that the trial court did not err in denying Ginn's motion in limine to suppress the evidence obtained in the search of the vehicle and in overruling her continuing objections related thereto at the trial. Hence, it denied Ginn her constitutional protections from unreasonable searches and seizures. Because I disagree, I respectfully dissent.

¶37. This Court has stated that the constitutional protections against unreasonable searches and seizures should be liberally construed in favor of citizens and strictly construed against the State. *Graves v. State,* 708 So.2d 858, 861 (Miss. 1997). Moreover, this Court has held that the Mississippi Constitution of 1890, Article 3, Section 23, provides greater protections from unreasonable searches and seizures than those protections afforded in the United States Constitution. *Id.*

¶38. The record indicates that Officer Bayles's reason for stopping the vehicle occupied by Ginn was that Ginn had wilfully and lewdly exposed herself. Miss. Code Ann. § 97-29-31 (Rev. 2000) defines indecent exposure as when a person "wilfully and lewdly exposes his person, or private parts thereof, in any public place, or in any place where others are present . . . ." The facts clearly indicate that Ginn did not expose herself to anyone. Ginn's alleged actions in changing her shirt were not directed at anyone. She did not remove her clothing in a public parking lot in the presence of the public. The arresting officer did not see Ginn naked. Neither did the officer stop the vehicle occupied by Ginn for a traffic violation.

¶39. In sum, the officer lacked probable cause or reasonable suspicion to believe criminal activity was transpiring. The stop and subsequent warrantless arrest of Ginn were without probable cause as required by the Fourth and Fourteenth Amendments to the United States Constitution and Article 3, Section 23 of the Mississippi Constitution of 1890. The fruits of the stop are therefore inadmissible. *McDuff v. State,* 763 So.2d 850, 854 (Miss. 2000). Thus, I would reverse and render Ginn's convictions based on the illegal stop, search, and seizure.

¶40.    For these reasons, I respectfully dissent.

**McRAE, P.J., JOINS THIS OPINION.**