929 So.2d 324 (2005)
Tommy Christopher BYNUM a.k.a. Tommy Bynum a.k.a. Tommy C. Bynum, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-02170-COA.
Court of Appeals of Mississippi.
April 19, 2005.
Rehearing Denied August 23, 2005.
*327 James A. Williams, Brookhaven, attorney for appellant.
Office of the Attorney General by Jeffrey A. Klingfuss, Jackson, attorney for appellee.
Before BRIDGES, P.J., GRIFFIS, and ISHEE, JJ.
ISHEE, J., for the Court:
¶ 1. Tommy Bynum and a co-defendant were indicted for robbery. The co-defendant was acquitted. Bynum was convicted by a jury in the Circuit Court of Lauderdale County. Bynum's motion for a new trial or judgment notwithstanding the verdict was denied, and Bynum appealed. We find no error and affirm.

STATEMENT OF FACTS
¶ 2. On October 11, 2002, Tommy Bynum and another individual drove to a grocery store parking lot in Meridian. Cindy Giles was in the parking lot walking toward her vehicle. Tommy Bynum approached her and attempted to take her purse. Bynum and Giles struggled, and Bynum pushed Giles to the ground. As Giles fell to the ground her purse strap broke and Bynum ran away with her purse. Giles chased Bynum across the parking lot, shouting as she ran. This commotion alerted two bystanders: Adalberto Medina and Perry Tubby. Medina was working in an adjacent store, and he saw Bynum running with Giles's purse. Medina saw Bynum get into a car in the parking lot, and Medina wrote down the vehicle's license number. Meanwhile, Tubby, who saw Bynum running with Giles's purse, recognized that a crime was in progress and shouted at Bynum. Tubby testified that he watched Bynum run from Giles, then get into a vehicle with another man and flee the scene. Tubby followed behind the get-away car in his own vehicle, and collected Giles's personal items which Bynum had thrown out of the car window. Tubby returned to the crime scene where he gave Giles the personal items he had recovered. He also gave a description of Bynum to the police.
¶ 3. Four days after the robbery, police responded to a call of suspicious activity at a local gas station. The get-away car used in the Giles robbery was at that location. The vehicle was impounded and Giles's change purse was discovered in the car. The driver was arrested and he implicated a white male in the Giles robbery. Acting on information they developed during their investigation, police conducted a photo line-up for Giles, Medina, and Tubby. Each identified Bynum as the robber, however, none of the witnesses had gotten a good look at the driver of the get-away car.
¶ 4. Bynum was indicted for robbery, and tried as a co-defendant with the vehicle *328 driver. After a jury trial, the driver was acquitted and Bynum was found guilty. Bynum's motion for a new trial or judgment notwithstanding the verdict was denied, and Bynum perfected this appeal asserting the following: (1) whether the trial court erred in the admission of the in-court identification testimony; (2) whether the trial court erred in the admission of the co-defendant's out-of-court statement; (3) whether the trial court erred in its instructions to the jury; (4) whether Bynum received ineffective assistance of counsel; (5) whether the trial court erred in denying Bynum's motion for a new trial; and (6) whether Bynum is entitled to a new trial based on cumulative error in the trial court.

ISSUES AND ANALYSIS

I. Whether the trial court erred in the admission of the in-court identification testimony.
¶ 5. Bynum argues that the trial court erred in allowing admission of the in-court identification testimony. Bynum maintains that there is a presumption of impermissible suggestiveness created by the police's failure to preserve a color photo array which they showed to one of the eyewitnesses. Branch v. Estelle, 631 F.2d 1229, 1234 (5th Cir.1980). Bynum maintains that the in-court identification was unreliable based on the United States Supreme Court's holding in Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).
¶ 6. Bynum points to specific testimony which he argues highlights the defects in the identification: the length of time of the robbery encounter was very short; Giles picked out two individuals as her possible assailant from the first photo array; testimony that Giles never mentioned multiple arm tattoos on her assailant despite telling police that he was wearing a shirt with cut-off sleeves; testimony reflects Bynum had multiple tattoos on his arms; testimony that Giles's estimate of her assailant's height varied from the time of her attack to the time she identified Bynum; testimony that although Giles subsequently identified Bynum from the second photo array, the second photo array did not contain a photo of the other individual she co-identified from the first photo array; testimony that Tubby only saw the assailant from a distance and for a short period of time; and testimony that Medina was not 100% certain in his identification of Bynum from the photo array.
¶ 7. It is the State's position that the identifications were reliable and that the trial court's ruling was appropriate. The State points out that there were three individuals, the victim and two bystanders, who identified Bynum as the assailant. The State maintains that there was an abundance of identification testimony and circumstantial evidence connecting Bynum to the crime. The State argues that the standard of review regarding the admissibility of the identification testimony is clearly erroneous, and that the trial court's decision was not clearly erroneous. Neil, 409 U.S. at 200, 93 S.Ct. 375.
¶ 8. The standard of review regarding the admission of identification testimony is as follows: "[u]nless we find that clear error occurred when a trial court allowed identification testimony, we will not reverse." McDowell v. State, 807 So.2d 413, 419(¶ 12) (Miss.2001). When this Court reviews the trial court's findings as to a pretrial identification which the defendant seeks to suppress, we must consider "whether or not substantial evidence supports the trial court's findings that ... the in-court identification testimony was not impermissibly tainted," and we will reverse those findings by the trial court "only where there is an absence of substantial *329 credible evidence supporting it." Cousar v. State, 855 So.2d 993, 999(¶ 17) (Miss.2003).
¶ 9. The United States Supreme Court enumerated the following factors in Neil to be considered within the totality of the circumstances when determining whether an identification complies with due process:
(1) the opportunity of the witness to view the criminal at the time of the crime;
(2) the witness'[s] degree of attention;
(3) the accuracy of the witness'[s] prior description of the criminal;
(4) the level of certainty demonstrated by the witness at the confrontation; and
(5) the length of time between the crime and the confrontation.
Neil, 409 U.S. at 199-200, 93 S.Ct. 375. We shall discuss in turn each witness's identification in relation to the Neil factors.

1. Cindy Giles.

¶ 10. Cindy Giles was the robbery victim. The record reflects that the attack occurred in the afternoon in broad daylight. Giles testified that she was approached by Bynum in the parking lot as she was about to walk between two vehicles. They saw each other face to face. Giles stopped in order to allow Bynum room to walk by. Bynum approached close enough to grab her and her purse and they struggled. Giles testified that she was face to face with Bynum during the attack, and that the attack lasted several seconds. Giles then chased Bynum across the parking lot until he rounded the corner of the building and escaped in a vehicle. Giles testified that she was emotionally upset from the attack, but that she tried very hard to give an accurate description of Bynum to the police when they arrived. Giles described him as a white male, five feet six inches tall, wearing blue jeans and a white shirt. One week after the attack, Giles viewed a photo line-up of possible assailants. She identified two individuals as possibly being her attacker, and stated that Bynum looked the most like the attacker. Bynum's photo, however, was several years old. Giles said that it looked like his face, but that her attacker's hair was much longer than the picture indicated. Four days later, Giles viewed a second photo line-up of possible attackers. This photo array contained a more recent photo of Bynum, and Giles positively identified him as the man that attacked her. Giles also made an in-court identification of Bynum as the man who robbed her.
¶ 11. Based on the testimony, it is reasonable to conclude that Giles had ample opportunity to view Bynum as he walked toward her between the vehicles and while he attacked her. She saw him face to face and within arms length during the attack. Although her description of Bynum at the scene was not overly detailed, it was not materially incorrect. Based on an old photograph, Giles identified Bynum within a week of the robbery as the most likely person who attacked her. Four days after that, when shown a recent photograph, Giles positively and unequivocally identified Bynum as her attacker. The second photo array did not contain a picture of the other person Giles chose in the alternative as her assailant because the individuals in that first photo array had short hair. The second photo array only contained photos of persons with long hair per Giles's description.

2. Adalberto Medina.

¶ 12. Medina was an eyewitness who worked in a store adjacent to the crime scene. Medina testified that he saw a vehicle in the parking lot moving from parking space to parking space. The vehicle eventually backed into a parking space *330 outside Medina's front store window. Suspicious of this activity, Medina made note of the license number. Ten to fifteen minutes after noticing the vehicle park in front of his store, Medina saw a white man with a purse run in front of his store. The man yelled to the driver, "Let's go. Let's go," and jumped into the car which then drove away. Medina testified that he did not get a very good look at the man. A week later, detectives showed Medina a photo line-up and Medina testified that he was not really sure which photo was the assailant. Medina did, however, identify Bynum as the man he believed he saw running with the purse.

3. Perry Tubby.

¶ 13. Tubby was an eyewitness who saw the attacker fleeing with Giles's purse. Tubby testified that he was parked across the street from the crime scene. He had just left work for the day and was warming up his vehicle before leaving for home. Tubby testified that as he was waiting, he looked across the street and saw a man running with a purse. Believing a crime was in progress, Tubby stepped up onto the running boards of his vehicle to get a better look. He observed the assailant for several seconds as the attacker ran from Giles, then when the attacker stopped to get into a parked car, Tubby shouted at him. Tubby testified that the attacker then stopped and looked directly at him. Tubby testified that he got a good look at him. Tubby further testified that he saw the robber's face for an additional ten to fifteen seconds while the attacker was in the get-away car. When the police responded to the scene, Tubby gave a description of the robber which was materially similar to the description which Giles had given. A week later, Tubby identified Bynum as the assailant based on a photo line-up. Tubby testified that he was 100% certain that Bynum was the robber. The record also reflects that Tubby made an in-court identification of Bynum as the man he saw running with Giles's purse on the date in question.
¶ 14. At the suppression hearing, the trial court determined that the motion to suppress the identification testimony should be denied. The trial court appropriately accepted the testimony supporting the State's position as true and viewed the evidence in the light most favorable to the prosecution. The trial court found that the cumulative testimony of three eyewitnesses identified Bynum as the person who snatched Giles's purse, fled to a get-away car, and was seen throwing Giles's personal items from her purse out of the car window.
¶ 15. This Court's review of the record reflects that all three witnesses had an opportunity to view the criminal at the time of the crime. Giles and Tubby were focused on the robber and attentive to the events as they transpired. The record also reflects that Giles and Tubby gave a materially equivalent description of the criminal at the time of the attack which was consistent with Bynum's physical characteristics. Finally, the record reflects that Tubby and Giles identified Bynum with certainty within a week and a half of the crime. Giles's identification was delayed by the initial use of an out-of-date photo of Bynum. Medina's identification was tentative due to his limited observation, and Medina made that fact clear to the jury. Having applied the testimony to the factors enumerated in Neil, and having considered them within the totality of the circumstances, this Court concludes that there was substantial evidence to support the admissibility of the identification testimony. Bynum's assertion is without merit.
*331 ¶ 16. Bynum additionally argues that the trial court committed reversible error in failing to exclude Detective Havard's testimony that another police officer felt the witness description fit Bynum. Bridgeforth v. State, 498 So.2d 796, 800 (Miss.1986). Bynum's reliance on Bridgeforth, however, is not well-placed. There is a distinction to be made within the hearsay analysis between hearsay testimony offered to show information acted on by the police, which is generally admissible, and hearsay testimony that is offered for the truth of the matter asserted, which is generally inadmissible. The Bridgeforth Court excluded the police officer's testimony as inadmissible hearsay because the prosecution's case lacked direct evidentiary support. Bridgeforth, 498 So.2d at 800. The Court's rationale was that a conviction not be based solely on what witnesses who were not available for cross-examination had told the police, but rather a conviction should be based on direct evidence. Id.
¶ 17. In this case, Bynum's conviction was based on direct evidence. The victim identified him as the robber. Two eyewitnesses identified him as the man whom they saw running with her purse, and Bynum was seen throwing Giles's property out of the car window. This direct evidence was sufficient to support a conviction, and we conclude that Bynum was not prejudiced by the admission of Detective Havard's testimony.

II. Whether the trial court erred in the admission of the co-defendant's out-of-court statement.
¶ 18. The Confrontation Clause of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI.
¶ 19. Bynum maintains that the trial court committed reversible error by admitting the co-defendant's statement to the police into evidence. Bynum argues that his rights under the Confrontation Clause were violated because the co-defendant chose not to testify at trial and his statement was presented to the jury without his being subjected to cross-examination. Bynum argues alternatively that the trial court erred in failing to redact any references in the statement which were incriminating to him. Bynum cites Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and Gray v. Maryland, 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998) in support of his position. A thorough review of these cases reveals the following: where a co-defendant's statement is introduced at a joint trial which powerfully implicates the defendant in a crime, a jury instruction or redactions which naturally suggest the defendant's name has been removed is not sufficient protection of the defendant's right to confront his accuser where the co-defendant does not take the stand and subject himself to cross-examination by the defendant. Gray, 523 U.S. at 197, 118 S.Ct. 1151. More significantly, the United States Supreme Court has also held, however, that where the co-defendant's statements do not facially implicate the defendant in the crime, there is no Bruton error. Richardson v. Marsh, 481 U.S. 200, 208-09, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987).
¶ 20. The following statement was given by the co-defendant to the police and was admitted into evidence; we present it in its entirety so that it may be read in context:
I don't know the white guy's name but he asked me to take him to the store. I said yea[h] and took him to the Winn Dixie .... Coming in from the left side of the store, he asked me to park there. He left out of the car one time. He *332 came back to the car and asked me to give him a few minutes and he left again. He stayed gone about ten or fifteen more minutes. I was [lying] back in the car asleep. All of a sudden I heard someone say crank the car up and it was the white guy, so I cranked the car up. He got in the car and we left. There seemed to be a car following us, and he asked me to let him out of the car . . . . He got out and he ran off and I drove off. I haven't seen him since.
Q. Have you ever had dealings with this white male before?
A. No[,] I haven't, just speaking to him.
Q. You did not know his name, is that correct?
A. Right, he had told me his name but I can't remember it.
Q. If you saw him again, would you know him?
A. Yeah.
Q. I am showing you a photo line-up, do you see the white male you had in the car with you?
A. No.
Q. Are you sure he is not one of the photos you looked at?
A. Positive.
Q. Did you see the white male with a purse or anything of that nature?
A. No.
Q. Why was the change purse in your car?
A. Maybe it fell out when he got out of the car.
Q. Where did you pick up the white male?
A. On 5th St. between about 40th and 41st Ave.
Q. Is there anything else concerning this case that you may have forgotten to tell me that you need to tell me know?
A. No.
¶ 21. The full text of the statement clearly reflects that no specific individual was facially implicated by the co-defendant's statement to the police. The co-defendant's only reference to another person is to an unnamed "white male." The Richardson Court explained the rationale for its holding by stressing the critical role confessions play in criminal proceedings. "Confessions `are more than merely "desirable"; they are essential to society's compelling interest in finding, convicting, and punishing those who violate the law.'" Richardson, 481 U.S. at 210, 107 S.Ct. 1702 (quoting Moran v. Burbine, 475 U.S. 412, 426, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)). The Richardson Court did not require that all confessions be excluded, only those confessions which are incriminating to the defendant on their face. Furthermore, according to Gray, it is clear that redacting the phrase "white male", which was not facially incriminating, would have undoubtedly been prejudicial to Bynum by implication. Therefore, consistent with the United States Supreme Court's holdings in Richardson, Bruton and Gray, we conclude that the statement at issue in this appeal does not present a Bruton violation, and we find that Bynum's argument that his Confrontation Clause rights were violated by the admission of this statement is without merit.
¶ 22. Bynum further argues that this Court should consider his appeal in the light of Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). In Crawford, the United States Supreme Court held that "out-of-court statements by witnesses that are testimonial are barred, under the Confrontation Clause, unless witnesses are unavailable and defendants had prior opportunity to *333 cross-examine witnesses, regardless of whether such statements are deemed reliable by [the] court...." Crawford, 124 S.Ct. at 1365-70.
¶ 23. The Crawford decision, however, was decided in March 2004, which was some seven months after Bynum was convicted. The Mississippi Supreme Court has not spoken on the retroactivity of Crawford, however, their general position on retroactivity is well known. "This Court has followed the United States Supreme Court's general rule of retroactivity, applying decisions in criminal cases retroactively except in cases `where retroactive enforcement would cause serious disruption of the administration of justice and where the prior rule was not infected by a serious absence of fundamental fairness.'" Morgan v. State, 703 So.2d 832, 839 (Miss.1997) (quoting Cain v. McKinnon, 552 So.2d 91, 92 n. 1 (Miss.1989)). Based on the benign character of the co-defendant's statement in this case, and the assuredly disruptive impact that the retroactive application of Crawford would undoubtedly create in the form of innumerable appeals, we conclude that Crawford should not be applied retroactively in this appeal.

III. Whether the trial court erred in its instructions to the jury.
¶ 24. Bynum argues that the trial court erred in giving Instruction C-9 because the language of that instruction was of a peremptory quality and essentially instructed the jury that Bynum was the robber.
¶ 25. Uniform Rules of Circuit and County Court Practice, Rule 3.07 requires an attorney to state for the record the basis for his specific objection to a requested jury instruction. A party who fails to object contemporaneously to a jury instruction procedurally bars the issue on appeal. Jones v. State, 776 So.2d 643, 653(¶ 35) (Miss.2000).
¶ 26. In this case, the record reflects that not only did Bynum fail to object to Instruction C-9, but when asked by the trial judge if he had an objection, his response was, "No, sir. We don't have a problem with that." Accordingly, Bynum waived appellate review by not objecting to the jury instruction at trial, and this Court declines to address this issue upon appeal.

IV. Whether Bynum received ineffective assistance of counsel.
¶ 27. Bynum argues that he is entitled to a new trial due to ineffective assistance of counsel. Bynum cites in his brief a litany of errors committed by his trial counsel: failure to move for suppression of the in-court and out-of-court identifications; failure to move for a severance; failure to insist on redaction of the co-defendant's out-of-court statement; failure to get a limiting instruction on that statement; failure to obtain a cautionary instruction on accomplice statements; and failure to object to peremptory language in the accomplice instruction.
¶ 28. In order to establish ineffective assistance of counsel, Bynum must demonstrate that his attorney's performance was deficient and that this deficiency deprived him of a fair trial. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Moore v. State, 676 So.2d 244 (Miss.1996). In applying this standard to the facts in the case at bar, we are mindful of the strong presumption that counsel rendered adequate assistance. Strickland, 466 U.S. at 689, 104 S.Ct. 2052.
¶ 29. Bynum offers a number of cases in support of his argument in which the Mississippi Supreme Court has determined that the respective defendants were prejudiced by ineffective assistance of *334 counsel, however, Bynum has not demonstrated to this Court how he was prejudiced by his counsel's alleged errors. The burden is on the defendant to satisfy both elements of the Strickland test and the defendant "must allege `with specificity and detail' that counsel's performance was deficient and that the deficient performance so prejudiced his defense so as to deprive him of a fair trial." Moore, 676 So.2d at 246 (quoting Perkins v. State, 487 So.2d 791, 793 (Miss.1986)). Bynum has failed to meet that burden. Bynum has not demonstrated how his counsel's tactical decisions undermined the proper functioning of the adversarial process. Strickland, 466 U.S. at 686, 104 S.Ct. 2052. "It is the appellant's duty to provide authority and support for its issue." Rigby v. State, 826 So.2d 694, 707(¶ 44) (Miss.2002). Bynum's assertion is without merit.

V. Whether the trial court erred in denying Bynum's motion for a new trial.
¶ 30. It is Bynum's position that the evidence was insufficient to support the verdict and that the trial court erred in denying Bynum's motion for a new trial because the verdict may have been based on bias, prejudice, and improper prejudicial evidence. Bynum recounts essentially the same argument from Issue I above regarding the identification of Bynum as the assailant in support of his argument.
¶ 31. A motion for a new trial challenges the weight of the evidence. Ginn v. State, 860 So.2d 675, 685(¶ 31) (Miss.2003). The trial court's denial of a motion for a new trial will only be reversed if the court abused its discretion or the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice. Id. at (¶ 31). In determining whether a jury verdict is against the overwhelming weight of the evidence this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the trial court has abused its discretion in failing to grant a new trial. Herring v. State, 691 So.2d 948, 957 (Miss.1997).
¶ 32. The record reflects that three individuals, the victim and two eyewitnesses, testified regarding Bynum's participation in the robbery. Each witness was subjected to cross-examination by two separate defense counsels. We are reminded that "factual disputes are properly resolved by a jury and do not mandate a new trial." Ginn, 860 So.2d at 685(¶ 31). Based on the record testimony and accepting as true the evidence which supports the verdict, we are unable to find that the trial court abused its discretion or that the verdict was against the overwhelming weight of the evidence.

VI. Whether Bynum is entitled to a new trial based on cumulative errors in the trial court.
¶ 33. Bynum argues that he did not receive a fair and impartial trial, and that, according to Wilburn v. State, 608 So.2d 702, 705 (Miss.1992), the cumulative errors he asserts justifies a reversal and remand for a new trial. Having found no merit to any of Bynum's individual assignments of error, we are unable to find that cumulative error requires a reversal.
¶ 34. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT OF CONVICTION OF ROBBERY AND THE SENTENCE OF TWELVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, PAYMENT OF A FINE OF $5,000, AND PAYMENT OF RESTITUTION IN THE AMOUNT OF $390 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.
*335 BRIDGES, P.J., MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., LEE, P.J., AND IRVING, J.
BARNES, J., Concurring in Part and in Result:
¶ 35. While I in concur in part of the majority's analysis, I cannot agree with that portion of the majority opinion which declines to apply Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), retroactively. We are bound by the decisions of the United States Supreme Court to apply Crawford in all cases pending on direct review at the time the decision was rendered. Although I find error, under Crawford, in the trial court's admitting the statement of Bynum's co-defendant, I conclude the error to be harmless. Accordingly, I concur in the result reached by the majority.
¶ 36. At first blush, the majority's quotation from Morgan v. State, 703 So.2d 832, 839 (Miss.1997) might appear to reflect that the Court is following the "general rule of retroactivity" pronounced by the United States Supreme Court. A closer reading, however, reveals that the language relied upon by the majority is in fact an exception to the Supreme Court rule. Morgan states:
"As a rule, judicial decisions apply `retroactively.' Indeed, a legal system based on precedent has a built-in presumption of retroactivity." Solem v. Stumes, 465 U.S. 638, 642, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1984) (citation omitted). The United States Supreme Court has on several occasions held that new decisions that affect the process of determining guilt or innocence and which could well lead to acquittal should be given retroactive effect. Michigan v. Payne, 412 U.S. 47, 61-62, 93 S.Ct. 1966, 1973-75, 36 L.Ed.2d 736 (1973) (Justice Marshall dissenting) (citing Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1972); Adams v. Illinois, 405 U.S. 278, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972)). This Court has followed the United States Supreme Court's general rule of retroactivity, applying decisions in criminal cases retroactively except in cases "where retroactive enforcement would cause serious disruption of the administration of justice and where the prior rule was not infected by a serious absence of fundamental fairness." Cain v. McKinnon, 552 So.2d 91, 92 n. 1 (Miss. 1989) (citations omitted).[1]
Morgan, 703 So.2d at 839 (emphasis added). The two decisions of this Court which have quoted Morgan's "serious disruption" language, relied upon by the majority, have recognized this to be the state rule of retroactivity. In Graves v. State, 761 So.2d 950 (Miss.Ct.App.2000), the Court stated:
The general rule is that decisions of the Mississippi Supreme Court are presumed to have retroactive effect. Morgan v. State, 703 So.2d 832, 839 (Miss. 1997). Only where "retroactive enforcement would cause serious disruption of the administration of justice and where the prior rule was not infected by a serious absence of fundamental fairness" will decisions of our supreme court not be retroactively applied. Id. *336 Graves, 761 So.2d at 954(¶ 8) (emphasis added); see also Richbourg v. State, 744 So.2d 352, 355(¶ 6) (Miss.Ct.App.1999) (same).
¶ 37. While the federal rule of retroactivity was once similar to our state rule, the federal rule has been revised by the United States Supreme Court:
In Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) ... [the Supreme Court] developed a doctrine under which we could deny retroactive effect to a newly announced rule of criminal law. Under Linkletter, a decision to confine a new rule to prospective application rested on the purpose of the new rule, the reliance placed upon the previous view of the law, and "the effect on the administration of justice of a retrospective application" of the new rule.... We subsequently overruled Linkletter in Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), and eliminated limits on retroactivity in the criminal context by holding that all "newly declared... rules[s]" must be applied retroactively to all "criminal cases pending on direct review." Id. at 322, 107 S.Ct., at 712. This holding rested on two "basic norms of constitutional adjudication." Ibid. First, we reasoned that "the nature of judicial review" strips us of the quintessentially "legislat[ive]" prerogative to make rules of law retroactive or prospective as we see fit. Ibid. Second, we concluded that "selective application of new rules violates the principle of treating similarly situated [parties] the same." Id. at 323, 107 S.Ct. at 713.
Harper v. Virginia Department of Taxation, 509 U.S. 86, 94-95, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993) (extending Griffith's ban against "selective application of new rules" to civil cases).
¶ 38. The Harper court confirmed, "When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." Harper, 509 U.S. at 97, 113 S.Ct. 2510. Further, the court declared that
The Supremacy Clause, U.S. Const., Art. VI, cl. 2, does not allow federal retroactivity doctrine to be supplanted by the invocation of a contrary approach to retroactivity under state law. Whatever freedom state courts may enjoy to limit the retroactive operation of their own interpretations of state law ... cannot extend to their interpretations of federal law.
Id. at 100, 113 S.Ct. 2510 (citations omitted).
¶ 39. The majority's reliance upon the state, rather than federal, approach to retroactivity is, thus, error. The Supreme Court's interpretation of the Confrontation Clause as announced in Crawford must "be given full retroactive effect in all cases still open on direct review" on March 8, 2004, the date of the Supreme Court pronouncement. Since the instant direct appeal was pending on that date, we must determine whether the trial court's rulings comport with the requirements of Crawford:
Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay lawas does [Ohio v.] Roberts, [448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597], and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the *337 common law required: unavailability and a prior opportunity for cross-examination. We leave for another day any effort to spell out a comprehensive definition of "testimonial." Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closet kinship to the abuses at which the Confrontation Clause was directed.
Crawford, 541 U.S. 36, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (footnote omitted).
¶ 40. The majority opinion suggests that Crawford would apply to the facts of the instant case. I concur. The evidence introduced at trial was testimonial. The co-defendant gave his statement during a police interrogation, a situation which the Supreme Court specifically recognized as giving rise to testimonial evidence. Pursuant to Crawford, the trial court erred in allowing the police officer to testify as to the statement of Bynum's co-defendant where Bynum lacked the opportunity for cross-examination of his co-defendant. Under the facts of this case, however, I believe the error to be harmless.
¶ 41. The United States Supreme Court has held that Confrontation Clause errors are subject to the harmless-error analysis of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). An otherwise valid conviction will, thus, not be set aside "if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." Van Arsdall, 475 U.S. at 681, 106 S.Ct. 1431.
Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.
Van Arsdall, 475 U.S. at 684, 106 S.Ct. 1431; Clark v. State, 891 So.2d 136, 142(¶ 29) (Miss.2004).
¶ 42. In Clark, the Mississippi Supreme Court determined that the trial court erred in allowing a police officer to read the statement of a co-defendant to the jury where the co-defendant refused to testify, thereby denying the defendant an opportunity for cross-examination. While the supreme court found that "[t]his is the very kind of violation that Crawford seeks to abolish,"[2] the court determined the error to be harmless in light of the overwhelming evidence against the defendant. Clark, 891 So.2d at 140, 142 (¶¶ 16, 30).
¶ 43. In the instant case, the statement given by Bynum's co-defendant never mentioned Bynum by name. The statement only identified a white male. The statements found to be harmless in Clark mentioned the defendant by name. Given the "benign" nature of the instant statement and the overwhelming evidence against Bynum, as recited in the majority opinion (i.e., the victim's identification of Bynum, two eyewitnesses' identification of Bynum as the man they saw running with the purse, and the fact Bynum was seen throwing the victim's property out of the *338 car window), I would find beyond a reasonable doubt that the trial court's error in admitting the co-defendant's statement was harmless error. Accordingly, I concur with the result reached by the majority opinion.
KING, C.J., LEE, P.J., AND IRVING, J., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] The citation in Cain omitted by the Morgan court was to a state, not federal, decision. See Cain, 552 So.2d at 92 n. 1.
[2] The Mississippi Supreme Court's application of Crawford without even questioning the retroactivity of the decision lends further support to the inevitable conclusion that this Court must apply Crawford to the instant appeal.