# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-KA-00418-SCT

*JOHN A. WILLIAMS*

*v.*

*STATE OF MISSISSIPPI*

DATE OF JUDGMENT:             02/03/2006
TRIAL JUDGE:                  HON. SHARION R. AYCOCK
COURT FROM WHICH APPEALED:    ITAWAMBA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       WILLIAM C. STENNETT
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                              BY: DEIRDRE McCRORY
DISTRICT ATTORNEY:            JOHN RICHARD YOUNG
NATURE OF THE CASE:           CRIMINAL - FELONY
DISPOSITION:                  AFFIRMED - 10/11/2007
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE SMITH, C. J., DICKINSON AND LAMAR, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     This appeal comes to us from the Circuit Court of Itawamba County, where John A. Williams was convicted on two counts: (1) manufacturing marijuana in a quantity greater than thirty grams, and (2) possession of a firearm by a convicted felon. For manufacturing marijuana, Williams was sentenced to fifteen years imprisonment and ordered to pay a $1,500 fine. For being a convicted felon in possession of a firearm, Williams was sentenced to three years imprisonment to run concurrently with the fifteen-year sentence. Williams alleges that: (1) the jury verdict was against the overwhelming weight of the evidence and

contrary to the law; (2) he did not receive a fair trial because some members of the jury knew the defendant and lawyers in this case; (3) the court erred in allowing a police surveillance tape to be shown to the jury; (4) the court erred in admitting evidence of his prior felony conviction; (5) his constitutional rights were violated because he was questioned without being advised of his rights; (6) he was prejudiced by improper statements made during the State's closing argument; and (7) his trial counsel was ineffective. Finding no reversible error, we affirm Williams's conviction.

**FACTS**

¶2. In March 2005, Chris Graham was surveying land around the Briar Creek area in Itawamba County when he discovered what appeared to be marijuana plants growing in small red cups.[1] Graham and his partner left the area immediately. Later that day, Graham called Chris Umfress, a narcotics agent with the Itawamba County Sheriff's Department and reported what he had discovered. He later took Umfress to the area where he had seen the cups.

¶3. Umfress testified that he suspected the plants in the cups were marijuana. The Sheriff's Department decided to conduct video surveillance on the plants using a waterproof, motion-detecting camera system. This camera was set up on April 7, 2005. Umfress testified that they returned to the camera every three days to change the tape and the batteries in the

---

[1]Graham testified that he and his partner were running a survey line for the owner of the adjacent land, Ms. Jackson. The plants were actually located on an adjacent property owned by R.C. Grimes.

system. On April 27, Umfress monitored the footage and saw that someone had been recorded tending the plants. Although the tape showed someone tending the plants, the person's face was never revealed because the camera angle was too low. The tape clearly showed two dogs, a white German shepherd and a cocker spaniel, accompanying the person tending the plants.

¶4. Umfress surmised that since the dogs were accompanying the suspect on the videotape, it was likely that the suspect was walking to the plants from somewhere nearby. Acting on this belief, Umfress decided to do some "mobile surveillance," driving on some of the roads in the area looking for the dogs which were seen on the video. Umfress testified that he discovered the two dogs at the residence of John A. Williams. He decided to continue video surveillance in hopes of getting a positive identification of the suspect.

¶5. On June 6, 2005, Umfress returned to the surveillance area to check the camera and the plants. He testified that he could tell that the plants had been tended. He reviewed the videotape, and on this second video, the suspect's face was clearly shown. Umfress testified that Officer David Sheffield, who also was reviewing the tape, immediately identified the suspect as John Williams. Having a positive identification of the suspect, Umfress decided to collect the plants in the woods. However, when he attempted to do so, he realized that some of the plants were no longer there. Believing that Williams had harvested the missing plants, Umfress applied for and received a search warrant for Williams's residence.

¶6. Umfress and five other agents proceeded to search Williams's residence. According to Umfress's testimony, Williams was orally advised of his *Miranda* rights. Williams

admitted to ownership of the plants which had been under surveillance in the woods. Agents found two more plants at Williams's residence, along with dried marijuana in a Tupperware bowl and in a film canister. They also found at the residence a handgun in the drawer of a nightstand in the master bedroom, marijuana-growing literature and paraphernalia, a rifle, two shotguns, ammunition for the guns, and a buck knife. After being taken into custody, Williams signed a waiver of his *Miranda* rights, stating that he did not want a lawyer and that he would cooperate with the police and answer their questions.

## COURSE OF PROCEEDINGS

¶7.     On August 2, 2005, John A. Williams was indicted by a grand jury on one count of manufacturing marijuana in an amount greater than thirty grams and one count of possession of a firearm by a convicted felon. On January 27, 2006, in a one-day trial, an Itawamba County jury convicted Williams on both counts. Williams did not testify, nor did he call any witnesses. Alleging numerous errors which he believes deprived him of a fair trial, Williams filed a timely appeal with this Court.

## ANALYSIS

### I. Williams's motions for directed verdict and JNOV

¶8.     This Court reviews the denial of a motion for directed verdict under a de novo standard. *Gilmer v. State*, 955 So. 2d 829, 833 (Miss. 2007). The critical inquiry in deciding whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment not withstanding the verdict (JNOV) is whether the evidence shows beyond a reasonable doubt that the accused committed the act charged and that he did so

4

under such circumstances that every element of the offense existed. *Ivy v. State*, 949 So. 2d 748, 751 (Miss. 2007). If the evidence fails to meet this test, it is insufficient to support a conviction. *Id.* The legal sufficiency of the evidence is viewed in the light most favorable to the State. *Dixon v. State*, 953 So. 2d 1108, 1111 (Miss. 2007).

*A. Count I, Manufacture of Marijuana*

¶9. Mississippi Code Annotated section 41-29-139(a)(1) makes the manufacture of marijuana unlawful. Our law defines the term "manufacture" as:

> the production, preparation, propagation, compounding, conversion or processing of a controlled substance, either directly or indirectly, by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container.

Miss. Code Ann. § 41-29-105(q) (Rev. 2005).

¶10. Williams argues that the evidence against him was insufficient to support his conviction. During the testimony of Agent Umfress, it was established that someone had been videotaped by the surveillance camera tending the plants located in the woods. On the first video, which was admitted into evidence as State Exhibit 1, the suspect could be seen bending over, tending to the plants, and then walking away from the plants. Because of the low angle of the camera, the suspect could be seen only from the waist down. However, the first video clearly did show two dogs, a white German shepherd and a cocker spaniel, accompanying the suspect. Two dogs fitting the description of the dogs on the video were found at Williams's residence, according to Umfress's testimony.

5

¶11. The second video, which was admitted as State Exhibit 2, again showed a suspect tending the plants. However, because Umfress raised the camera angle after monitoring the first video, the suspect's face was very clearly shown. Umfress and another agent identified this suspect as John Williams. Williams admitted that the marijuana plants found in the woods were his.

¶12. When the search warrant was executed at Williams's residence, the agents recovered two marijuana plants which were being grown on Williams's property, marijuana in a Tupperware bowl and a film canister, and marijuana-growing literature and paraphernalia. Williams admitted that these items belonged to him. The forensic analysis report from the Tupelo Crime Lab, which was admitted as State Exhibit 4, confirmed that the plants and substances recovered from the woods and Williams's residence were indeed marijuana. The aggregate weight of these items was 39.4 grams.

¶13. It is clear the State presented  sufficient evidence presented to find beyond a reasonable doubt that Williams was indeed guilty of each element of the crime of manufacturing marijuana. Therefore, this issue is without merit.

*B. Possession of a Firearm by a Convicted Felon*

¶14. Mississippi Code Annotated section 97-37-5 makes it unlawful for any person who has been convicted of a felony to possess a firearm and provides that anyone in violation of this section may be imprisoned for not more than three years, or be ordered to pay not more than $5,000 in fines, or both. Miss. Code Ann. § 97-37-5 (Rev. 2006).

¶15. It is undisputed that Williams previously was convicted of the felony of aggravated assault. His indictment and order of conviction were admitted into evidence as State Exhibit 5. The issue here is whether there was sufficient evidence to find that the gun found at Williams's residence was in Williams's possession.[2]

¶16. Because the gun was not found on Williams's person, the State must prove that the gun was in the constructive possession of Williams. "Constructive possession allows the prosecution to establish possession of contraband when evidence of actual possession is absent. Constructive possession is established by showing that the contraband was under the dominion and control of the defendant." *Roberson v. State*, 595 So. 2d 1310, 1319 (Miss. 1992) (citing *Vickery v. State*, 535 So. 2d 1371, 1379 (Miss. 1988)). "[T]here must be sufficient facts to warrant a finding that the defendant was aware of the presence and character of the particular [contraband] and was intentionally and consciously in possession of it." *Curry v. State*, 249 So. 2d 414, 416 (Miss. 1971).

¶17. Williams claims that the gun found at his residence was not his but his wife's and that the evidence was insufficient to establish that the gun belonged to him. It is clear from the record that Williams's residence was under the control and possession of both Williams and his wife. In *Ginn v. State*, this Court prescribed the proper rule for finding constructive possession of contraband in such a situation:

---

[2] Several guns were recovered during the search of Williams's residence. The only gun for which Williams was charged with possession was a .22 caliber pistol recovered from a nightstand in Williams's bedroom.

7

> We have held that where contraband is found upon premises not in the exclusive control and possession of the accused, additional incriminating facts must connect the accused with the contraband. Where the premises upon which contraband is found is not in the exclusive possession of the accused, the accused is entitled to acquittal, absent some competent evidence connecting him with the contraband.

*Ginn v. State,* 860 So. 2d 675, 685 (Miss. 2003). Because Williams's residence was not under his exclusive possession and control, we must determine whether additional incriminating factors connect Williams to the gun.

¶18. The handgun, which was admitted into evidence as State Exhibit 8, was found in the drawer of a nightstand located on the left side of the bed in Williams's bedroom. Umfress testified that on the right side of the bed was a dresser containing, among other things, female garments. On the nightstand in which the gun was located was a fixed-blade knife[3] and a metal box containing literature about growing marijuana. Williams said that the literature was his. Umfress testified that because of the items located in the dresser on the right side of the room and the nightstand on the left side of the room, it appeared that the left side of the room was the "masculine" side, i.e., Williams's side. Umfress testified that Williams's wife claimed that the gun was hers, but when he asked her to load bullets into the gun's magazine, she could not.

¶19. In viewing the evidence in the light most favorable to the State, we find that there was sufficient additional incriminating evidence for a reasonable juror to find beyond a

_____

[3] Umfress testified that in the first surveillance video, the suspect was wearing a fixed-blade knife on his belt.

reasonable doubt that Williams was in constructive possession of the handgun found in his bedroom. Therefore, this issue is without merit. The trial court did not err in denying Williams's motions for directed verdict and JNOV.

**II. Some jurors stated during voir dire that they knew people involved in the case.**

¶20. Williams claims that he was unable to receive a fair trial because potential jurors who stated during voir dire that they were familiar with the attorneys, witnesses, or Williams himself were allowed to serve as jurors in this case. However, because there was no challenge by the defense to any of these jurors at trial, Williams has waived his right to appeal on this issue.

¶21. In *Jaco v. State*, the defendants complained on appeal of the circuit court's refusal to strike a juror who had admitted friendship with the sheriff in the county of prosecution. *Jaco v. State,* 574 So. 2d 625, 633 (Miss. 1990). This Court held that because the defendants had failed to challenge the juror either for cause or peremptorily, they had waived the point on appeal. *Id.* at 634 (citing *Ratliff v. State*, 515 So. 2d 877, 880 (Miss. 1987)).

¶22. The trial court dismissed seven jurors for cause on its own motion. The State made two challenges for cause, one of which was granted by the court. The defense made no challenges for cause, and the defense did not use its peremptory challenges on the jurors about whom Williams now complains. This issue is procedurally barred.

**III. The introduction of the videotapes into evidence**

¶23. Williams argues that the trial court erred in allowing the videotapes from the surveillance camera in the woods to be shown to the jury. These videotapes each were admitted into evidence during the testimony of Agent Umfress. After the admission of the first video into evidence, defense counsel made the following objection: "Your honor, I do object to the showing [of] this video, because, first of all, they've already said to this jury that they will see this man on this tape." The trial court overruled the objection.

¶24. "A trial judge has broad discretion as to the admissibility of evidence. Unless this discretion is so abused as to be prejudicial to the accused, this Court will not reverse the lower court's ruling." *Coleman v. State*, 697 So. 2d 777, 784 (Miss. 1997) (quoting *Dye v. State*, 498 So. 2d 343, 344 (Miss. 1986)). Defense counsel's objection was properly overruled. In laying the predicate for admitting the first video into evidence, Umfress described what was on the tape. In doing so, Umfress refers to the suspect on the video as "a person," and never says "the defendant" or "Williams." The objection by defense counsel to the first video was erroneous.

¶25. Before the admission of the second videotape into evidence, after the first already had been shown to the jury, the prosecutor made the following remark about the second video:

> Prosecutor: And has that been cued up?
>
> Umfress: Yes it has.
>
> Prosecutor: **To the time that the defendant was out there at those plants?**
>
> Umfress: Yes, sir.

Defense counsel made no objection to the prosecutor's comment. When asked if she had objection to the second video being admitted into evidence, defense counsel stated, "No, but I do object to again telling them that they will see this gentleman in the picture, whereas they must determine whose picture it is." The trial court responded:

> Jury, I trust that that is understood that you are viewing this video making your own factual determination that, in fact, this indeed is or is not the defendant. That's your determination to make.

This Court presumes that a jury follows the direction of a trial court to disregard an improper comment. *Flora v. State*, 925 So. 2d 797, 805 (Miss. 2006).

¶26. The trial court did not directly sustain defense counsel's objection, nor did it admonish the prosecutor's comment. However, the trial court's instruction did inform the jury that they were to make their own factual determinations as to whether the suspect on the video was the defendant. The trial court did not abuse its discretion by allowing the videotapes to be played for the jury.

¶27. Williams also claims that the videos were not properly authenticated at trial. However, there was no objection at trial as to the authenticity of the videotapes. "It is elementary that different grounds than the objections presented to the trial court cannot be presented for the first time on appeal." *Thornhill v. State*, 561 So. 2d 1025, 1029 (Miss. 1989). Williams's argument that the videotapes were not properly authenticated is procedurally barred.

**IV. Evidence of Williams's previous felony conviction**

¶28. Williams claims that the trial court erred in allowing evidence pertaining to his previous conviction for aggravated assault. It is his contention that "the detailed description of the aggravated assault poisoned the minds of the jurors." The indictment and sentencing order for his prior felony conviction were entered into evidence as State Exhibit 5 to prove that Williams was in fact a "convicted felon" in possession of a firearm. There was no objection at trial to the indictment and sentencing order being entered into evidence, and this issue is therefore barred on appeal.

### V. Williams's *Miranda* rights claim

¶29. Williams claims that he was questioned by Agent Umfress prior to being informed of his constitutional rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). This argument is presented for the first time on appeal. No motion was made at the trial level to suppress the statements made by Williams to the agents at his home. Agent Umfress testified that he orally advised Williams of his rights during the execution of the search warrant. Further, Williams signed a waiver of his rights after being taken into custody. "As a general rule, constitutional questions not asserted at the trial level are deemed waived." *Pinkney v. State*, 757 So. 2d 297, 299 (Miss. 2000). This issue is procedurally barred.

### VI. Improper statement made by the prosecutor during closing argument

¶30. During closing rebuttal, the prosecutor made the following comment:

So how do you believe beyond a reasonable doubt turning to the gun, this Smith & Wesson, how do you believe beyond a reasonable doubt that this pistol was his? Well, one reason is it was found in or at the nightstand on what

12

appears to have been his side of the bed, but also because that's exactly what kind of pistol he shot Mark Lentz with.

Defense counsel immediately objected to the comment, arguing that no evidence of a shooting had come in, only that Williams was previously convicted of aggravated assault. *Id.* The trial court gave the following curative instruction to the jury:

> Ladies and gentlemen of the jury, I'm going to instruct you to disregard the statement that's been made by [the prosecutor]. You will see when you return to the jury room that State's Exhibit No. 5 in the indictment involving the case in 1992, the aggravated assault, that the weapon that is used is a 9-millimeter pistol. It's referred to in this indictment by a particular serial number. There's been no proof in this case that it's one and the same gun.

¶31. Williams argues that the trial court should have granted a mistrial sua sponte, in the absence of a no motion for a mistrial, because the jury was tainted by the prosecutor's comment. "The granting of a mistrial is within the sound discretion of the trial judge." *Hoops v. State*, 681 So. 2d 521, 528 (Miss. 1996). It is presumed that a jury follows the direction of a trial judge to disregard an improper comment or testimony. *Flora v. State*, 925 So. 2d at 805. "Our law presumes the jury does as it is told. To presume otherwise would render the jury system inoperable." *Williams v. State*, 684 So. 2d 1179, 1209 (Miss. 1996) (citations omitted).

¶32. There is no reason to believe that Williams was prejudiced or that the jury was tainted by the prosecutor's remark. Details of the shooting mentioned in the allegedly improper remark were already before the jury in the aggravated assault indictment, which had been admitted into evidence without objection. We must assume that the jury followed the instructions of the trial judge and disregarded the comment. After the court's admonishment,

13

the prosecutor himself said that he "did not mean to represent that that is the same gun." Further, the gun which was in evidence was not even a 9-millimeter, but a .22 caliber, showing the jury that it could not have been the same gun used in the aggravated assault. Given this set of circumstances, this Court cannot say that Williams was prejudiced by the prosecutor's comment, and there was no abuse of discretion in the trial court's failure to grant a mistrial *sua sponte*.

### VII. Ineffective assistance of counsel

¶33.    Williams next argues that his representation at trial was deficient, citing three alleged deficiencies that he claims constituted ineffective assistance of counsel.

¶34.    "To prevail on a claim of ineffective assistance of counsel, a defendant must meet a two-pronged test set forth in ***Strickland v. Washington***, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which this Court has adopted." ***Rankin v. State***, 636 So. 2d 652, 656 (Miss. 1994).

> The ***Strickland*** test requires a showing that counsel's performance was sufficiently deficient to constitute prejudice to the defense. The defendant has the burden of proving both prongs. A strong but rebuttable presumption, that counsel's performance falls within the wide range of reasonable professional assistance, exists. The defendant must show that but for his attorney's errors, there is a reasonable probability that he would have received a different result in the trial court.

***Id.*** (Citations omitted). Stated differently, a defendant must show that his trial counsel's performance was deficient and that he was prejudiced by the deficient representation. We will address each of Williams's arguments in turn.

*A. Counsel did not request severance of the charges.*

14

¶35.   Williams asserts that his trial counsel erred in not moving to have the charges against him severed so that the manufacturing-marijuana charge and the felon-in-possession-of-a-firearm charge could be tried in different proceedings.  The crux of this claim is that allowing the jury to hear evidence of the prior felony conviction prejudiced Williams in the manufacturing-marijuana charge.

¶36.    Mississippi Code Annotated section 99-7-2 dictates when two or more offenses may be charged in a single indictment:

> (1) Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan.
>
> (2) Where two (2) or more offenses are properly charged in separate counts of a single indictment, all such charges may be tried in a single proceeding.

This Court has prescribed a procedure for deciding whether multiple charges brought under one indictment meet the requirements of the statute:

> When a defendant raises the issue of severance, we recommend that the trial court hold a hearing on the issue.  The State, then, has the burden of making a prima facie case showing that the offenses charged fall within the language of the statute allowing multi-count indictments.  If the State meets its burden, a defendant may rebut by showing that the offenses were separate and distinct acts or transactions.  In making its determination regarding severance, the trial court should pay particular attention  to whether the time period between the occurrences is insignificant, whether the evidence proving each count would be admissible to prove each of the other counts. . . and whether the crimes were interwoven.

*Corley v. State*, 584 So. 2d 769, 772 (Miss. 1991).  Because this question was not raised at the trial level and arises from an ineffective-assistance-of-counsel claim, the burden is on

15

Williams to make a showing that his multi-count indictment violated the statute. Williams provides no authority, no argument, and no analysis whatsoever on this issue. Therefore, we will not address the merits of this claim. However, even if Williams could show that his counsel's failure to move for severance of these charges constituted deficient performance so as to meet the first prong of the *Strickland test*, Williams must also show that he was prejudiced by the deficient representation.

¶37. The second prong of the *Strickland* test requires the defendant to show that, absent counsel's errors, "there is a reasonable probability that he would have received a different result in the trial court." *Rankin v. State*, 636 So. 2d at 656. Williams has failed to meet his burden on this prong of the test. There was no shortage of credible evidence against Williams on the manufacture-of-marijuana charge, as discussed previously. Even if defense counsel had successfully moved to have the charges severed, given the strength of the State's case against Williams, he could not reasonably have expected a different result on the manufacture-of-marijuana charge. We find that Williams fails to meet the second prong of the *Strickland* test.

### B. Counsel presented no case-in-chief.

¶38. After the State presented its case at trial, the defense moved for a directed verdict. This motion was denied by the court, and the defense rested at that time. No witnesses were called on behalf of the defense. Williams now asserts that it was error constituting ineffective assistance for his counsel to call no witnesses.

¶39. It is not uncommon for the defense in a criminal case to call no witnesses. *See, e.g.*, ***Burrows v. State***, 961 So. 2d 701 (Miss. 2007), ***Shields v. State***, 702 So. 2d 380 (Miss. 1997), and ***Harrison v. State***, 635 So. 2d 894 (Miss. 1994). The only specific error that Williams alleges is counsel's failure to call Cynthia Williams, Williams's wife, as a witness so she could testify that the firearm found in the bedroom belonged to her.

¶40. There is a strong but rebuttable presumption "that counsel's performance falls within the wide range of reasonable professional assistance." ***Rankin v. State***, 636 So. 2d at 656. There could be many reasons why counsel chose not to call Cynthia Williams as a witness in this case, not the least of which could be to avoid a potentially damaging cross examination. Further, evidence already had been presented through cross examination of Umfress that Cynthia Williams claimed that the gun belonged to her.

¶41. Williams's counsel performed a thorough cross examination of the witnesses called by the State. After consulting with counsel, Williams himself made the decision that he did not wish to testify. Williams has not overcome the presumption that his counsel's performance was reasonable under the circumstances.

*C. Defense counsel did not request that Judge Aycock recuse herself.*

¶42. Williams asserts that defense counsel should have moved for Judge Aycock to recuse herself, claiming that Cynthia Williams had been involved in a lawsuit against Judge Aycock's brother, Darrel Harp, Jr., shortly before Williams's trial. Because of this connection, Williams argues that his counsel was deficient for not requesting a recusal.

17

¶43.   Nothing in the record indicates that Judge Aycock was even aware of the alleged lawsuit between her brother and the defendant's wife. The issue was never raised at the trial level, and the record is completely devoid of any evidence which would support this claim on appeal. Further, nothing in our law would have required Judge Aycock to recuse herself because of such a lawsuit, absent some showing of bias. "When a judge is not disqualified under § 165 of the Mississippi Constitution, or [Miss. Code Ann.] § 9-1-11, the propriety of his or her sitting is a question to be decided by the judge and is subject to review only in case of manifest abuse of discretion." *Ruffin v. State*, 481 So. 2d 312, 317 (Miss. 1985). There would have been no abuse of discretion in Judge Aycock's presiding over this case, even had defense counsel asked her to recuse. It cannot be said that defense counsel was deficient in not making a request that could properly have been denied. Further, a review of the record reveals no prejudice or bias on Judge Aycock's part. On the contrary, the record shows that Judge Aycock was fair and impartial in her rulings. Williams has shown no prejudice in having Judge Aycock preside over this case.

¶44.   After thorough review of the trial record, we find that Williams has failed to show that his trial counsel's assistance was sufficiently deficient to constitute prejudice to his defense. Therefore, Williams's claim of ineffective assistance of counsel is without merit.

**CONCLUSION**

¶45.   The evidence presented at trial was sufficient to support Williams's conviction on both counts. Further, Williams has not shown that his trial counsel was sufficiently deficient to support a finding of ineffective assistance under *Strickland* analysis. All other issues

brought were procedurally barred from consideration. Therefore, Williams's convictions as

to Counts I and II are affirmed.

¶46. **COUNT I: CONVICTION OF MANUFACTURE OF MARIJUANA GREATER THAN 30 GRAMS AND SENTENCE OF FIFTEEN (15) YEARS, WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE (5) YEARS ON POST RELEASE SUPERVISION, AFFIRMED. COUNT II: CONVICTION OF POSSESSION OF A WEAPON BY A CONVICTED FELON AND SENTENCE OF THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONCURRENTLY WITH SENTENCE IMPOSED IN COUNT I. APPELLANT SHALL PAY A FINE OF $1500.00, COURT COSTS IN THE AMOUNT OF $904.50 AND RESTITUTION OF $100.00.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., CONCURS IN RESULT ONLY.**