# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CP-00729-COA

**WILLIAM DOUG RONEY A/K/A WILLIAM D. RONEY**  APPELLANT

**v.**

**STATE OF MISSISSIPPI**  APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/18/2019 |
| TRIAL JUDGE: | HON. DAL WILLIAMSON |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | WILLIAM DOUG RONEY (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON ELIZABETH HORNE |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 04/28/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND C. WILSON, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1. William Doug Roney, appearing pro se, appeals from the judgment of the Circuit Court of Jones County, which denied his motion for post-conviction relief (PCR). Finding no error, we affirm.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2. In October 2012, Roney pleaded guilty to conspiracy to possess a controlled substance in a correctional facility, conspiracy to deliver a controlled substance, possession of precursors with intent to manufacture while in possession of a firearm, and molestation.

Roney was sentenced to a total of fifteen years in the custody of the Mississippi Department of Corrections (MDOC), with five years to serve and the remaining ten years suspended, conditioned on the successful completion of five years of post-release supervision and a community service program.

¶3. In May 2018, after Roney was released from full-time custody but still on post-release supervision, he was arrested by the Jasper County Sheriff's Department and charged with possession of drug paraphernalia, possession of a controlled substance (misdemeanor), and possession of a firearm by a felon. After a post-release supervision revocation hearing on May 23, 2018, the trial court found by a preponderance of the evidence that Roney had committed the new criminal offenses charged. The trial court revoked Roney's post-release supervision and ordered him to serve three years of his previously suspended ten-year sentence in the custody of the MDOC. The remaining seven years were suspended, conditioned on the successful completion of his time left on post-release supervision.

¶4. In March 2019, Roney filed a PCR motion, claiming the trial court erred in sentencing him to serve these three years in the custody of the MDOC. He argued that under the amended version of Mississippi Code Annotated section 47-7-37(5)(a) (Supp. 2019), because this was his first revocation of post-release supervision, the maximum sentence he could receive was ninety days in a technical-violation or restitution center. The trial court denied his PCR motion, finding Roney's reliance on this Code section misplaced. Instead, the trial court stated Mississippi Code Annotated section 47-7-37.1 (Rev. 2015) controls. It provides that "if a court finds by a preponderance of the evidence that a probationer or

2

person under post-release supervision has committed a *felony* . . . , the court may revoke his probation and impose any or all of the sentence. . . ." *Id.* (emphasis added). The trial court found by a preponderance of the evidence that Roney had committed a new felony—possession of a firearm by a felon—therefore, the court could sentence him to all or part of the original suspended sentence. Roney appealed.

## ANALYSIS

¶5. Roney raises three issues on appeal: the trial court improperly revoked his post-release supervision in violation of section 47-7-37(5) (Supp. 2019); the trial court lacked sufficient evidence to find by a preponderance of the evidence that he committed a felony; and his due process rights were violated.

¶6. "A circuit court's denial of post-conviction relief will not be reversed absent a finding that the court's decision was clearly erroneous." *Elkins v. State*, 188 So. 3d 613, 615 (¶7) (Miss. Ct. App. 2016). Questions of law are reviewed de novo. *Id.*

### I. Revocation of Post-Release Supervision

¶7. Roney argues the maximum sentence he could receive was ninety days in a technical-violation or restitution center under section 47-7-37(5)(a) (Supp. 2019). Roney requests this Court to reverse the trial court's revocation and reinstate his post-release supervision.

¶8. The two pertinent code sections at issue are sections 47-7-37(5)(a) and 47-7-37.1. Roney erroneously argues the 2018 amended version of section 47-7-37(5)(a) would apply. Section 47-7-37(5)(a) provides for revocation due to probation and post-release supervision violations, and punishment for technical violations. This statute was amended, effective July

1, 2018, to provide that it is the number of revocations, not technical violations, which controls whether the probationer is imprisoned for a certain number of days in a technical-violation center or whether his suspended sentence might be reimposed. However, because Roney's probation was revoked prior to the amendment, the former version is applicable. *See Lewis v. State*, No. 2018-CP-00970-COA, 2020 WL 634080, at *1-2 (¶6) (Miss. Ct. App. Feb. 11, 2020) (finding that the 2018 amendment to section 47-7-37(5) should not be applied retroactively).

¶9. Further, because Roney did not commit a technical violation but a new felony, section 47-7-37.1 applies rather than any version of section 47-7-37(5)(a).[1] Section 47-7-37.1 provides:

> *Notwithstanding any other provision of law to the contrary*, if a court finds by a preponderance of the evidence, that a probationer or a person under post-release supervision has committed a felony or absconded, the court may revoke his probation and impose any or all of the sentence. For purposes of this section, "absconding from supervision" means the failure of a probationer to report to his supervising officer for six (6) or more consecutive months.

(Emphasis added). Roney only points to the revised language of section 47-7-37(5)(a)

---

[1] The version of section 47-7-37(5)(a) applicable at the time of Roney's revocation read in part:

> If the court revokes probation for *a technical violation*, the court shall impose a period of imprisonment to be served in either a technical violation center or a restitution center not to exceed ninety (90) days for the *first technical violation* and not to exceed one hundred twenty (120) days for the *second technical violation*. For the *third technical violation*, the court may impose a period of imprisonment to be served in either a technical violation center or a restitution center for up to one hundred eighty (180) days or the court may impose the remainder of the suspended portion of the sentence. . . .

Miss. Code Ann. § 47-7-37(5)(a) (Rev. 2015) (emphasis added).

dealing with technical violations. However, Roney did not commit a technical violation but a new felony.

¶10. The State argues that the trial court properly applied section 47-7-37.1. We agree, as section 47-7-37.1 controls over section 47-7-37(5)(a) (Rev. 2015) under these circumstances. The trial court found Roney committed the felony of possession of a firearm by a felon. Therefore, the trial court properly revoked his post-release supervision and ordered him to serve three years of the previously suspended ten-year sentence in the custody of the MDOC.

## II.   Sufficiency of the Evidence

¶11. Roney argues that the State did not provide sufficient evidence that he committed the crime of felon in possession of a firearm, which would warrant revocation of his post-release supervision under section 47-7-37.1.

¶12. The standard of proof to determine if a defendant has violated the terms of post-release supervision is enough to "show the defendant 'more likely than not' violated probation," not proof beyond a reasonable doubt. *Anderson v. State*, 89 So. 3d 645, 653 (¶22) (Miss. Ct. App. 2011) (quoting *Younger v. State*, 749 So. 2d 219, 222 (¶13) (Miss. Ct. App. 1999)). In addition, a probationer does not have to be convicted of a crime before probation can be revoked. *Younger*, 749 So. 2d at 222 (¶12) (citing *Berdin v. State*, 648 So. 2d 73, 79 (Miss. 1994), *overruled on other grounds by Smith v. State*, 742 So. 2d 1146, 1146 (¶1) (Miss. 1999)).

¶13. The State correctly notes this issue is procedurally barred because Roney failed to

5

raise it before the trial court. "A petitioner who fails to raise an issue in his PCR motion may not raise that issue for the first time on appeal." *Bass v. State*, 174 So. 3d 883, 885-86 (¶7) (Miss. Ct. App. 2015). Procedural bar notwithstanding, the trial court's finding was supported by the evidence.

¶14. There was sufficient evidence presented at the revocation hearing to show by a preponderance of the evidence that Roney possessed a firearm. Because the firearm was not actually found on Roney's person, the State had to prove that Roney constructively possessed the firearm. "Constructive possession allows the prosecution to establish possession of contraband when evidence of actual possession is absent. Constructive possession is established by showing that the contraband was under the dominion and control of the defendant." *Williams v. State*, 971 So. 2d 581, 587 (¶16) (Miss. 2007) (quoting *Roberson v. State*, 595 So. 2d 1310, 1319 (Miss. 1992)). The State must show the defendant had knowledge of the firearm and "intentionally and consciously possessed [it]." *Evans v. State*, 802 So. 2d 137, 141 (¶12) (Miss. Ct. App. 2001). "Constructive possession may be established by direct evidence or circumstantial evidence." *Keys v. State*, 478 So. 2d 266, 268 (Miss. 1985).

¶15. Testimony during the revocation hearing established the following facts: on May 2, 2018, law enforcement executed a search warrant at Roney's residence on the basis that there was an active methamphetamine laboratory operating there. Also, on two separate occasions, police had found Roney in possession of a firearm at his residence but did not make an arrest because they were unaware of his felony convictions. Investigator Derrick

Knight testified that at Roney's trailer, while no methamphetamine laboratory was found, various drug paraphernalia were found: drug scales that later tested positive for traces of narcotics, a glass pipe used to smoke methamphetamine, bags and baggies used to package narcotics that tested positive for methamphetamine, and a semi-automatic pistol. Initially, Investigator Knight testified that he recovered the firearm from a desk in Roney's bedroom where his other personal belongings were found. Later in the hearing, Investigator Knight clarified that the weapon was found in a bedroom dresser drawer next to the desk. The dresser contained Roney's underwear, clothing, and wallet. Roney claimed that he knew the firearm was there but never "possessed it."

¶16. Roney's live-in fiancée, Jennifer Bostic Neece, was in the trailer during the search, lying on the bed on the other side of the master bedroom from where the firearm was found. At the hearing, she testified the firearm was hers. Neece claimed to have obtained it from Roney's daughter a few days earlier because Neece had received threatening text messages from her ex-boyfriend, a former convict. She testified that she kept it locked away in her vehicle when Roney was at home and only brought the firearm into the trailer when Roney left the property. On the day of the search, she thought Roney had left the property, so she brought the gun inside. She claimed to have heard Roney's motorcycle "start up and leave." However, Investigator Knight testified that when Roney was found in his shop, his motorcycle was not cranked, and he was not wearing a helmet. The trial judge questioned Neece about her practice of moving the firearm when Roney was on the property and found her testimony not credible.

¶17. The State cites *Williams* as factually instructive for "constructive possession." In *Williams*, the defendant challenged the sufficiency of the evidence for felon in possession of a firearm. *Williams*, 971 So. 2d at 587 (¶17). Both the defendant and his wife claimed the firearm in question belonged to the wife. *Id.* at 587-88 (¶¶17-18). Because the residence was under the "possession and control" of both his wife and him, the State had to prove "additional incriminating facts." *Id.* at (¶17). The firearm was found in a nightstand drawer on the side of the bedroom that contained masculine items, while the nightstand on the other side contained female garments. *Id.* at 588 (¶18). These facts were sufficient to find beyond a reasonable doubt the defendant constructively possessed the handgun. *Id.* at (¶19).

¶18. Here, as in *Williams*, both Roney and Neece lived in the trailer where the firearm was found, and both claimed the firearm belonged to Neece. Yet, it was found in the dresser drawer among Roney's personal belongings and not on her side of the bedroom. From these facts, it could be reasonably inferred the firearm was under his dominion and control. Further, Roney admitted to Investigator Knight that he had knowledge that the firearm was in the trailer. Roney was still on the property when law enforcement arrived to execute the warrant; Neece had not moved the firearm to her vehicle. Additionally, the burden of proof here, preponderance of the evidence, is much lower than the one in *Williams* (beyond a reasonable doubt). Moreover, the facts can support an inference that the defendant had knowledge of the firearm's presence. *See Evans*, 802 So. 2d at 141 (¶12) (The evidence was sufficient to support constructive possession of a firearm by a felon because the defendant had knowledge of firearms on property—he lived in the mobile home and stored clothes in

the closet where weapons were kept.).

¶19. Roney claims there was no evidence linking him to the weapon, and Investigator Knight's testimony was inconsistent about the location of the weapon in the bedroom. While Investigator Knight initially stated the firearm was on Roney's desk, and then later in Roney's dresser drawer, both pieces of furniture were next to each other in his bedroom. Moreover, the trial judge found Investigator Knight's testimony credible, but Neece's testimony completely lacking in credibility, especially her description about moving the firearm to her vehicle every time Roney came home. We cannot find this determination was made in error, as appellate courts do not "reweigh the evidence or make witness-credibility determinations." *Little v. State*, 233 So. 3d 288, 292 (¶20) (Miss. 2017). We conclude there was sufficient evidence presented at the revocation hearing to find by a preponderance of the evidence that Roney committed the felony of possession of a weapon by a felon.

### III. Due Process

¶20. Finally, Roney appears to argue his right to due process was violated; he cites several cases discussing the due process requirements for revocation hearings. He also states Investigator Knight's testimony was "inadmissible hearsay" because it was not supported "by police records or other documentation" to corroborate his testimony.

¶21. Roney did not raise any due process claims in his PCR motion; therefore, the argument is waived. *Bass*, 174 So. 3d at 885-86 (¶7). Procedural bar notwithstanding, his argument is without merit. Investigator Knight's testimony was not hearsay; he testified about what he observed while executing the search warrant. No corroboration was needed.

9

Further, the cases Roney cites are not applicable to this situation, where there was live testimony of a police officer.

¶22. In conclusion, the trial court did not err in denying Roney post-conviction relief.

¶23. **AFFIRMED.**

**CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**