# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CP-00023-COA

**DALVIN BOOKER**                                                              **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/20/2019 |
| TRIAL JUDGE: | HON. GERALD W. CHATHAM SR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DALVIN BOOKER (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ZAKIA HELEN ANNYCE BUTLER |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 02/02/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.    Dalvin Booker appeals from the DeSoto County Circuit Court's denial of his petition for post-conviction collateral relief (PCR).[1]  On appeal, Booker argues the circuit court (1) unlawfully revokes his post-release supervision and (2) erroneously denied him credit for his seven years of good standing while on post-release supervision.  Finding no error, we affirm

---

[1] The circuit court's judgment provided that the court "dismissed" Booker's PCR petition.  In a "dismissal," the court "finally dispos[es] of an action, suit, motion, etc." without reaching the merits and "without trial of the issues involved." *Dismissal*, Black's Law Dictionary 469 (6th ed. 1990).  Because the circuit court here reviewed and reached a finding on the merits of Booker's claims, we conclude the court actually *denied* Booker's PCR petition.  *See Jackson v. State*, 67 So. 3d 725, 730 (¶19) (Miss. 2011).  We therefore refer to the final disposition of Booker's PCR petition as a "denial" rather than a "dismissal."

the circuit court's judgment.[2]

## FACTS

¶2.    In September 2011, Booker plead guilty to the felony of attempted robbery. Subject to certain enumerated terms and conditions, the circuit court sentenced Booker to ten years of post-release supervision. In June 2018, the State filed a petition to revoke Booker's post-release supervision. The State asserted that Booker had violated the terms of his post-release supervision by committing one count of possession of a controlled substance (marijuana) with intent to distribute and two counts of possession of a firearm by a felon. In August 2018, the circuit court held a hearing on the State's petition.

¶3.    At the revocation hearing, Sergeant Jonathan Ellis with the Southaven Police Department testified that he received an anonymous tip in April 2018 about marijuana and prescription pills being sold from a residence in Southaven, Mississippi. The information Sergeant Ellis received also indicated that Booker and his wife Kimberly Blount lived at the residence. Sergeant Ellis placed the residence under surveillance and observed two vehicles parked in the driveway. One vehicle, a black Volkswagen, was registered to Booker; the second vehicle, a silver Hyundai, was registered to Blount. Sergeant Ellis testified that the information he gathered from Booker's vehicle registration, driver's license record, and

---

[2] The State filed a motion to waive Mississippi Rule of Appellate Procedure 47, if applicable, because the attorney who appears on the State's behalf in this appeal previously worked as a judicial clerk for this Court. Rule 47 prohibits a former law clerk of either the Mississippi Supreme Court or this Court from participating "in any case that was pending in either court during the tenure of such position." M.R.A.P. 47. Because this Court had not yet begun to review Booker's appeal at the time the State's attorney worked for this Court, we grant the State's motion to waive Rule 47.

criminal history confirmed the Southaven address to be Booker's residence.

¶4.     Sergeant Ellis stated that on four different occasions, he inspected the trash placed on the street in front of the residence.  During the initial trash inspection, officers discovered a check stub that identified the Southaven address as Booker's residence, packaging material commonly associated with marijuana sales, green marijuana, and burnt marijuana cigars.  In a subsequent search of the residence's trash, the officers found additional burnt marijuana cigars and a glass marijuana pipe.  A third trash inspection yielded no new evidence, but the fourth trash inspection revealed several more burnt marijuana cigars.  Sergeant Ellis testified that on all four trash-inspection days, he observed Booker's Volkswagen parked at the residence.

¶5.     Sergeant Ellis obtained and executed a warrant to search the residence.  At the time of the search, neither Booker nor Blount was present, but Blount's mother Mildred Blount, sister Deaja Blount, and three nieces were present.  In their written statements to police, Mildred and Deaja confirmed that Booker and Blount resided at the address.  Deaja's statement further provided that she had resided in the home with Booker and Blount for about two weeks, that she knew Blount smoked marijuana, and that Booker had provided the marijuana to Blount.

¶6.     Upon entering the residence, officers encountered a locked master bedroom.  After gaining entrance to the bedroom, the officers discovered a bag inside a foot locker at the foot of the master bed.  The bag contained multiple jars of marijuana, packing material consistent with marijuana sales, rubber gloves, digital scales, and a locked box with about $613.  In

other parts of the master bedroom, the officers found multiple smaller bags that each contained about one gram of marijuana. Inside a chest of drawers, the officers found a .22-caliber pistol and an AK-47 platform. They also found a .380-caliber pistol inside a night stand beside the bed. Finally, in the master bathroom, the officers discovered a second set of digital scales. Sergeant Ellis testified that the officers recovered a total of 124.538 grams of marijuana from the residence. He further stated that the two weapons recovered from the master bedroom were registered to Blount.

¶7. During the officers' search of the residence, Booker arrived at the scene. Booker had in his possession a key chain with three keys. The first key unlocked the Volkswagen that Sergeant Ellis had repeatedly seen parked at the residence, the second key unlocked the residence's front door, and the third key unlocked the residence's master bedroom. After being taken into custody and given his *Miranda* rights,[3] Booker provided a statement to Sergeant Ellis. Booker stated that he had lived at the Southaven residence on and off again for about two years. Booker claimed that due to marital problems with Blount, he had also sometimes lived with his mother, Stacy McKinney. Booker admitted that the men's clothing items found inside the Southaven residence's master bedroom belonged to him. Booker further told Sergeant Ellis that he did not use marijuana but that he knew Blount did. While Booker stated that he knew Blount had firearms at the residence, he denied knowing their exact location.

¶8. Blount later confirmed during her own questioning that she and Booker were married,

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

both resided at the Southaven address, and both shared the residence's master bedroom. Blount told Sergeant Ellis that the marijuana belonged solely to her. She further claimed that the firearms belonged to her and that she usually kept them at her sister's home.

¶9. Following Booker's arrest, Sergeant Ellis monitored Booker's phone calls at the DeSoto County detention center. During a phone call with Blount, Booker discussed the items the officers had seized from the residence. Booker informed Blount that the amount of marijuana seized was "not right." During another phone call between Booker and his mother, McKinney, she asked Booker whether the police had discovered any money inside his Southaven residence. Sergeant Ellis testified that McKinney asked the question several times before Booker corrected her and stated, "I don't live in that house, Mama. I live with you."

¶10. At the hearing, McKinney testified that Booker had lived at her home in Horn Lake, Mississippi, during the time that Sergeant Ellis had the Southaven residence under surveillance. McKinney stated that Booker and Blount had separated and that Booker would sometimes spend the night at her home. Although McKinney stated that she sometimes drove Booker's Volkswagen, she clarified on cross-examination that she had not driven the Volkswagen on the dates Sergeant Ellis had observed the vehicle at the Southaven residence.

¶11. Blount's sister, Quannita Blount, also testified at the hearing. Quannita stated that the two guns seized from the Southaven residence were usually kept at her home. Quannita testified that Blount had asked her to store the weapons at her house because Booker was not supposed to be around guns. Quannita stated that she only brought the guns back over to

5

Blount's home because the sisters were about to leave on a trip, and Quannita did not want the guns at home with her children while she was gone. Quannita further stated that Booker was supposed to stay at his mother's home during the sisters' trip and was therefore not expected to be at the Southaven residence while the guns were there.

¶12. The circuit court considered the parties' evidence and determined the State had proved it was more likely than not that Booker had violated his post-release supervision and committed the felonies of possession of marijuana with intent to distribute and possession of firearms by a felon. After finding by a preponderance of the evidence that Booker had committed the newly charged offenses, the circuit court revoked Booker's probation and ordered him to serve his previously suspended ten-year sentence in the custody of the Mississippi Department of Corrections. Following the revocation of his probation, Booker filed a "Petition for Order to Show Cause, or in the Alternative, Petition for Habeas Corpus" and a "Motion to Set Aside Probation Revocation," which the circuit court treated as a collective request for PCR. Aggrieved by the circuit court's denial of his requested PCR, Booker appeals.

**STANDARD OF REVIEW**

¶13. "When reviewing a circuit court's denial or dismissal of a PCR motion, we will only disturb the circuit court's decision if it is clearly erroneous; however, we review the circuit court's legal conclusions under a de novo standard of review." *Freeman v. State*, 294 So. 3d 1245, 1247 (¶5) (Miss. Ct. App. 2020) (quoting *Tingle v. State*, 285 So. 3d 708, 710 (¶8) (Miss. Ct. App. 2019)).

## DISCUSSION

### I. Revocation of Post-Release Supervision

¶14. Booker contends the State failed to prove that he violated the terms of his post-release supervision. According to Booker, he "was charged with, but never convicted of, the commission of a felony . . . ." As a result, Booker argues the circuit court unlawfully revoked his post-release supervision.

¶15. "The Mississippi Supreme Court has held: 'A probationer does not have to be convicted of a crime to be in violation of his probation but, rather, probation may be revoked when it is more likely than not that a violation occurred.'" *Jordan v. State*, 270 So. 3d 176, 178-79 (¶10) (Miss. Ct. App. 2018) (quoting *McCalpin v. State*, 166 So. 3d 24, 26-27 (¶7) (Miss. 2013)). As Mississippi Code Annotated section 47-7-37.1 (Rev. 2015) provides, "if a court finds by a preponderance of the evidence[] that a probationer or a person under post-release supervision has committed a felony or absconded, the court may revoke his probation and impose any or all of the sentence."

¶16. Here, because the officers discovered no marijuana or weapons on Booker's person, the State had to prove, either by direct or circumstantial evidence, that Booker constructively possessed the contraband. *See Roney v. State*, 294 So. 3d 1268, 1272 (¶14) (Miss. Ct. App. 2020). "Constructive possession allows the prosecution to establish possession of contraband when evidence of actual possession is absent. Constructive possession is established by showing that the contraband was under the dominion and control of the defendant." *Id.* (quoting *Williams v. State*, 971 So. 2d 581, 587 (¶16) (Miss. 2007)). "There must be

7

sufficient facts to warrant a finding that the defendant was aware of the presence and character of the particular contraband and was intentionally and consciously in possession of it." *Williams*, 971 So. 2d at 587 (¶16) (quoting *Curry v. State*, 249 So. 2d 414, 416 (Miss. 1971)). "[W]here contraband is found upon premises not in the exclusive control and possession of the accused, additional incriminating facts must connect the accused with the contraband." *Id.* at 587-88 (¶17) (quoting *Ginn v. State*, 860 So. 2d 675, 685 (¶32) (Miss. 2003)).

¶17. After receiving a tip that prescription pills and marijuana were being sold from Booker and Blount's Southaven residence, Sergeant Ellis placed the home under surveillance. The ensuing investigation uncovered bags of marijuana, drug paraphernalia, and weapons concealed in multiple locations around the locked master bedroom and bathroom. Although Booker and Blount claimed that the contraband belonged exclusively to Blount, Booker possessed a key to the locked master bedroom, and both Booker and Blount admitted that they shared the bedroom. While Booker also admitted to Sergeant Ellis that he knew about Blount's marijuana use and that there were weapons inside the home, the written statement provided by Blount's sister Deaja established that Booker had more than just knowledge of the contraband. Deaja informed Sergeant Ellis that she had been living with Booker and Blount for about two weeks prior to the search warrant's execution. Although Deaja only confirmed seeing Blount smoke marijuana, she stated that Booker had been the one to actually supply the marijuana to Blount. Finally, in a monitored phone call after his arrest, Booker informed Blount that the amount of marijuana the police had

8

reportedly seized from their home was incorrect.

¶18.   Based on such testimony, the circuit court concluded the State had established by a preponderance of the evidence that Booker committed the felonies of possession of marijuana with intent to distribute and possession of firearms by a felon.  Upon review, we find the State presented sufficient proof that Booker constructively possessed the marijuana and firearms because he "was aware of the presence and character of the particular contraband and was intentionally and consciously in possession of it." *Williams*, 971 So. 2d at 587 (¶16) (quoting *Curry*, 249 So. 2d at 416).  We therefore find no error in the circuit court's revocation of Booker's post-release supervision.

## II.    "Good Standing" Credit

¶19.   Without conceding that the circuit court properly revoked his post-release supervision, Booker next asserts that the circuit court should have credited him for the seven years of "good standing" he accumulated while on post-release supervision.  As Mississippi caselaw clearly establishes, however, "a defendant is not entitled to credit toward a suspended sentence for time spent on [post-release supervision]." *O'Neal v. State*, 281 So. 3d 274, 279 (¶17) (Miss. Ct. App. 2019); *see also Carey v. State*, 271 So. 3d 795, 797 (¶5) (Miss. Ct. App. 2019) ("[P]robation does not equal time served and cannot be credited toward a suspended sentence.") (quoting *Simmons v. State*, 913 So. 2d 1011, 1012 (¶7) (Miss. Ct. App. 2005)).  Therefore, upon finding that Booker's felony violations warranted the revocation of his post-release supervision, the circuit court possessed the authority to fully reinstate Booker's previously suspended ten-year sentence.  We therefore find this assignment of error

9

lacks merit.

## CONCLUSION

¶20.    Because we find no error in the denial of Booker's PCR petition, we affirm the circuit

court's judgment.

¶21.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD AND LAWRENCE, JJ., CONCUR. SMITH, J., NOT PARTICIPATING.**